# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL GARCIA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>BECKER PROFESSIONAL DEVELOPMENT CORPORATION,<br><br>        Defendant. | Case No. 1:25-cv-12157-JEK<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Dated: October 22, 2025

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (BBO # 716245)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorney for Plaintiff*

## TABLE OF CONTENTS

NATURE OF THE ACTION ...................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

    I.       HISTORY AND OVERVIEW OF THE VPPA ......................................................2

    II.      DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER ................................3

    III.    DEFENDANT KNOWINGLY DISCLOSES CONSUMERS' PERSONALLY
          IDENTIFIABLE INFORMATION AND VIDEO VIEWING INFORMATION
          TO THIRD PARTIES..............................................................................................5

          A.       Overview..................................................................................................5

          B.       Google......................................................................................................7

          C.       Meta.......................................................................................................12

    III.    DEFENDANT DISCLOSES CLASS MEMBERS' PII AND VIDEO-VIEWING
          INFORMATION TO GOOGLE AND META FOR THE PURPOSES OF
          MARKETING, ADVERTISING, AND ANALYTICS ........................................17

          A.       Google Analytics ..................................................................................17

          B.       Google Conversion Linker....................................................................19

          C.       Google Signals......................................................................................20

          D.       Meta Pixel.............................................................................................22

    III.    DEFENDANT KNOWINGLY DISCLOSES CLASS MEMBERS' PII AND
          VIDEO-VIEWING INFORMATION TO GOOGLE AND META ...................25

    VIII.   EXPERIENCE OF PLAINTIFF ........................................................................27

PARTIES ...............................................................................................................................29

JURISDICTION AND VENUE ...........................................................................................29

CLASS ALLEGATIONS ......................................................................................................36

CAUSES OF ACTION ..........................................................................................................38

PRAYER FOR RELIEF .......................................................................................................41

JURY TRIAL DEMAND ......................................................................................................41

Plaintiff Michael Garcia ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendant Becker Professional Development Corp. ("Becker" or "Defendant"), for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

2.      The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

3.      The VPPA imposes civil liability on "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710.

4.      Defendant operates becker.com (the "Website"), which offers review materials for the Certified Public Accountant (CPA),[1] Certified Management Accountant (CMA),[2] Enrolled Agent (EA),[3] and Certified Internal Auditor (CIA) exams,[4] in addition to Continuing Professional Education (CPE) materials for accounting professionals.[5]

---

[1] *See* BECKER, CPA EXAM REVIEW, https://www.becker.com/cpa-review.

[2] *See* BECKER, CMA EXAM REVIEW, https://www.becker.com/cma-review.

[3] *See* BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review.

[4] *See* BECKER, CIA EXAM REVIEW, https://www.becker.com/cia-exam-review.

[5] *See* BECKER, CPE, https://www.becker.com/cpe.

5.    There are hundreds, if not thousands, of pre-recorded videos[6] that may be viewed on-demand by individuals completing exam review and CPE learning on the Website.

6.    Unbeknownst to Plaintiff and Class Members, however, Defendant knowingly and intentionally disclosed Website users' personally identifiable information—including a record of every video viewed by the user—to unrelated third parties.  By doing so, Defendant violated the VPPA.

7.    Plaintiff brings this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

## FACTUAL BACKGROUND

## I.    HISTORY AND OVERVIEW OF THE VPPA

8.    The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record.  Congress responded by passing the VPPA, with an eye toward the digital future.  As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.  In an area of interactive television

---

[6] *See, e.g.*, BECKER, CPA EXAM REVIEW, https://www.becker.com/cpa-review ("Becker's CPA Exam Review packages include … 900+ concept videos"); BECKER, CMA EXAM REVIEW, https://www.becker.com/cma-review ("[For] CMA Review … [y]ou'll get [] access to a comprehensive 2-part review course that includes[] … lecture videos"); BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review ("EA Review … [i]nclude[s]: … [c]oncept videos[;] [t]ax form videos[;] SkillBuilder videos"); BECKER, CIA EXAM REVIEW, https://www.becker.com/cia-exam-review ("CIA Exam Review … [i]nclude[s]: … [c]oncept lecture videos delivered by industry leading CIA instructors"); BECKER, CPE, https://www.becker.com/cpe ("Earn CPE credits your way[.] … Watch on-demand courses for self-paced study anytime and anyplace"); BECKER, HOW TO GET CPE CREDITS (BEFORE DEADLINE DAY), https://www.becker.com/blog/how-to-get-your-cpe-credits-before-end-of-year ("CPE on-demand is a recorded video course you can take anytime and any place, so they're incredibly convenient.").

cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong.

S. Rep. 100-599, at 5-6 (cleaned up).

9.     In 2012, Congress amended the VPPA, and in so doing, reiterated the VPPA's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-258, at 2.

10.     The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

## II.     DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER

11.     Becker provides its subscribers (many of whom pay considerable sums)[7] with a

---

[7] *See, e.g.*, BECKER, CPA ONLINE COURSES & EXAM REVIEW, https://www.becker.com/cpa-review/courses ("Advantage" for $2,499; "Pro" for $2,659; "Pro+" for $2858; "Premium" for $3,099; "Concierge" for $5,349"); BECKER, CMA REVIEW ONLINE COURSES & PACKAGES, https://www.becker.com/cma-review/courses ("CMA Review Pro" for $1,209; "CMA Review Advantage" for $1,599); BECKER, EA EXAM REVIEW COURSES, https://www.becker.com/ea-review/courses ("EA Review Essentials" for $499; "EA Review Pro" for $799); BECKER, CIA EXAM REVIEW COURSE, https://www.becker.com/cia-exam-review/courses ("CIA Review Essentials" for $899; "CIA Review Premium" for $1,299; "CIA Review Pro" for $1,599); BECKER, BECKER ONLINE CPE SUBSCRIPTION, https://www.becker.com/cpe/courses ("Essentials" for $329; "Select" for $499; "Prime" for $799; "Prime (2-year)" for $1,429).

library of hours of pre-recorded videos.  These include, *inter alia*, "concept videos"[8]; "lecture videos"[9]; "[t]ax form videos"[10]; "SkillBuilder videos"[11]; and "CPE … video course[s]."[12]

      12.      Website users "need an account to access [their] course materials."[13]  To create an account, individuals are required to provide their first and last name, email address, and phone number.[14]

      13.      Becker was founded in 1957 and is widely utilized[15] throughout both Massachusetts and the entirety of the United States.  According to the website analytics provider Semrush,[16] during the two-year period of June 2023 to May 2025, there were approximately 23,900,000 Website visits and 5,200,000 unique Website visitors in the United States.[17]



---

[8] *See, e.g.*, BECKER, CPA EXAM REVIEW, https://www.becker.com/cpa-review; BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review.

[9] *See, e.g.*, BECKER, CMA EXAM REVIEW, https://www.becker.com/cma-review; BECKER, CIA EXAM REVIEW, https://www.becker.com/cia-exam-review.

[10] *See, e.g.*, BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review.

[11] *Id.*

[12] *See, e.g.*, BECKER, HOW TO GET CPE CREDITS (BEFORE DEADLINE DAY), https://www.becker.com/blog/how-to-get-your-cpe-credits-before-end-of-year.

[13] BECKER, CREATE A NEW ACCOUNT, https://www.becker.com/user/register.

[14] *Id.*

[15] *See, e.g.*, BECKER, CPA EXAM PREP, CPE CONTINUING EDUCATION & CMA EXAM PREP, https://www.becker.com ("2 million+ candidates have prepared with Becker").

[16] *See, e.g.*, SEMRUSH, ABOUT US, https://www.semrush.com/company.

[17] *See* SEMRUSH, TRAFFIC ANALYSIS, https://www.semrush.com/analytics/traffic/traffic-overview.

III.    **DEFENDANT KNOWINGLY DISCLOSES CONSUMERS' PERSONALLY IDENTIFIABLE INFORMATION AND VIDEO VIEWING INFORMATION TO THIRD PARTIES**

A.    **Overview**

14.    Prior to the commencement of this action, Plaintiff's counsel conducted a dynamic analysis of the Website.  A "dynamic analysis" records the transmissions that occur from a user's device.

15.    Plaintiff's counsel tested what information (if any) Defendant discloses when a user watches a pre-recorded video on the Website.

16.    The analysis revealed that Defendant discloses information sufficient to identify Plaintiff and specific Class Members and the specific videos they watched to at least two third parties: Google LLC ("Google") and Meta Platforms, Inc. ("Meta").

17.    Specifically, the dynamic analysis found that when a Website user creates an account and watches a pre-recorded video on the Website, Defendant discloses the following information to Google and Meta.

| SUMMARY OF THIRD-PARTY EXFILTRATION | | |
|---|---|---|
| **Third Party** | **Video Info** | **Identifiers** |
| **Google** | Video Title, URL, Video Events | AUID, Google Account, Google Cookies |
| **Meta** | Video Title, URL, Video Events | Phone Number (hashed), FBP |

18.    These disclosures were effectuated through the third parties' respective trackers:

the Meta Pixel,[18] as well as Google Analytics,[19] Google Conversion Linker,[20] Google Signals,[21]

and Google's tags/libraries associated therewith.[22]

---

[18] *See, e.g.*, META, META PIXEL, https://developers.facebook.com/docs/meta-pixel/; META, WHAT IS THE META PIXEL?, https://www.facebook.com/business/tools/meta-pixel; META, META PIXEL: GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started ("The Meta Pixel is a snippet of JavaScript code that loads a small library of functions you can use to track … visitor activity on your website.").

[19] *See, e.g.*, GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447; GOOGLE, START LEARNING ABOUT GOOGLE ANALYTICS, https://developers.google.com/analytics.

[20] *See, e.g.*, GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/7549390.

[21] *See, e.g.*, GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; GOOGLE, [UA] ACTIVATE GOOGLE SIGNALS [LEGACY], https://support.google.com/analytics/answer/7532985; GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]")

[22] *See, e.g.*, JUSTIA, HISTORY OF GOOGLE ANALYTICS, https://onward.justia.com/history-of-google-analytics/ (describing Classic Analytics/ga.js, introduced in or around 2007; Universal Analytics/analytics.js, introduced in or around 2012; and the Global Site Tag/Google Tag/gtag.js, introduced in or around 2017); GOOGLE, INTRODUCTION TO GA.JS (LEGACY), https://web.archive.org/web/20240630045510/https://developers.google.com/analytics/devguides/collection/gajs; GOOGLE, ADD ANALYTICS.JS TO YOUR SITE, https://web.archive.org/web/20240701002341/https://developers.google.com/analytics/devguides/collection/analyticsjs/; GOOGLE, [GA4] SET UP ANALYTICS FOR A WEBSITE AND/OR APP, https://support.google.com/analytics/answer/9304153 ("To begin seeing data in your new Google Analytics 4 property, you'll need to do one of the following: Add the tag to a website builder or CMS-hosted website (e.g., HubSpot, Shopify, etc.)[;] [a]dd the Google tag directly to your web pages[;] [a]dd your tag using Google Tag Manager"); GOOGLE, TAGGING FOR GOOGLE ANALYTICS, https://developers.google.com/analytics/devguides/collection/ga4/tag-options ("The Google tag is a single tag you can add to your website to measure organic and ad performance. … Google Tag Manager is a web-based tag management system, that lets you create Google tags and install them on your website, without manually adding JavaScript snippets to your site."); GOOGLE, SET UP GOOGLE ANALYTICS EVENTS IN TAG MANAGER, https://support.google.com/tagmanager/answer/13034206 ("To set up an event using Google Tag Manager, you will configure a Google Analytics: GA4 Event tag"); GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/7549390 ("Conversion linker tags are used to help tags measure click data so that conversions are measured effectively."); GOOGLE, ENABLE GOOGLE SIGNALS FOR SERVER-SIDE TAG MANAGER, https://developers.google.com/tag-platform/tag-manager/server-side/google-signals-in-sgtm?option=GA4 ("In Google Analytics, activate Google signals for the property you reference in your client-side Google tag."); GOOGLE, [GA4] PREDEFINED USER DIMENSIONS,

**B.    Google**

19.    When a Becker user watches a pre-recorded video on the Website, Defendant discloses to Google: (i) Google Signals, which "associates [data] with user[s'] … Google accounts," for "users who have signed in …  and who have turned on Ads Personalization"[23]; (ii) Google cookies, which allow Google to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite"[24]; (iii) the user's Google Advertiser user ID ("AUID"), which is "a unique identifier for a user" used in connection with advertising[25]; and (iv) the title and URL of the video the user is watching.  This is evinced by the following Website transmissions, tracker settings, and cookies table.

| Request URL | https://analytics.google.com/g/collect?v=2&tid=G-ZYBPGW6PN4&gtm=45je56b1v884958838za200zb890315366&_p=1749830837759&_dbg=1&gcd=13l3l3l3l1l1&npa=0&dma=0&tag_exp=101509157~103116026~103200004~103233427~103351869~103351871~104617979~104617981~104661466~104661468~104718208~104736445~104736447&cid=266509115.1749828005&ul=en-us&sr=1920x1080&uaa=x86&uab=64&uafvl=Chromium%3B136.0.7103.93%7CMicrosoft%2520Edge%3B136.0.3240.64%7CNot.A%252FBrand%3B99.0.0.0&uamb=0&uam=&uap=Windows&uapv=19.0.0&uaw=0&arc=1&frm=0&pscdl=noapi&_eu=AAACAAQ&_s=2&sid=1749828005&sct=1&seg=1&dl=https%3A%2F%2Fcpelearning.becker.com%2Fcourses%2FCPEC-43249%2Fdetail&dr=https%3A%2F%2Fcpelearning.becker.com%2Fmedia%2F85499641%2Fwatch&dt=CPE&en=page_view&_ee=1&_et=10&tfd=1308 |
| dl | https://cpelearning.becker.com/media/85499641/watch |
| dr | https://cpelearning.becker.com/courses/CPEC-43249/detail |
| dt | Conflict Resolution | CPE Learning |
| en | page_view |

https://support.google.com/analytics/answer/9268042 ("As long as you use … gtag.js, you don't need to write additional code to collect the following user dimensions from your mobile app and/or website[:] … Google signals[.]").  *See also* GOOGLE, ANALYZE EXISTING TAG CONFIGURATIONS, https://developers.google.com/tag-platform/devguides/existing; GOOGLE, RESTRICT TAG DEPLOYMENT, https://developers.google.com/tag-platform/tag-manager/restrict.

[23] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; *see also* GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

[24] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

[25] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/google-ads/answer/9148089?hl=en.

| Request URL | https://www.google.com/ccm/collect?en=page_view&dr=cpelearning.becker.com&dl= https%3A%2F%2Fcpelearning.becker.com%2Fmedia%2F85499641%2Fwatch&scrsrc=w ww.googletagmanager.com&frm=0&rnd=693182343.1749830776&dt=Conflict%20Res olution%20%7C%20CPE%20Learning&knavt=n&npa=0 &gtm=45He56b1v890315366za200&gcd=13l3l3l3l1l1&dma=0&tag_exp=101509157~ 103116026~103200004~103233427~103351869~103351871~104573694~104617979 ~104617981~104661466~104661468~104718208~104736445~104736447&tfft=17498 30775947&tfd=834&apve=1&apvf=f |
|---|---|

| en | page_view |
|---|---|
| dr | cpelearning.becker.com |
| dl | https://cpelearning.becker.com/media/85499641/watch |
| scrsrc | www.googletagmanager.com |
| frm | 0 |
| rnd | 693182343.1749830776 |
| dt | Conflict Resolution | CPE Learning |
| auid | 1517161811.1749828005 |

20.     That Defendant discloses to Google, via Google Analytics, Google Conversion Linker, and Google's tags/libraries associated therewith, the video title and the URL of the video the user is watching, is shown by the yellow highlights.  Here, the title of the video was "Conflict Resolution" and the category of the video was "CPE Learning[.]"  The URL of the video was "https://cpelearning.becker.com/media/85499641/watch[.]"

21.     That Defendant discloses to Google, via Google Conversion Linker and Google's tags/libraries associated therewith, the user's Google Advertiser user ID (AUID) is shown by the red highlight.  According to Google, an AUID is "a unique identifier for a user" used to help "measure conversions accurately[.]"[26]  A digital analytics specialist[27] who worked for tracking technology consultancy company Stape[28] further explains an AUID as a "parameter that stores a

---

[26] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/ google-ads/answer/9148089?hl=en; *see also id.* ("[W]hen the [] tags fire on the conversion page, it will use the stored … AUID to properly measure conversions. … In order to measure conversions accurately, the … AUIDs captured in first-party cookies on your landing pages have to be available in the browser on your conversion pages as well.").

[27] Giovani Ortolani Barbosa, LINKEDIN, https://www.linkedin.com/in/giovani-ortolani-barbosa/ (last visited Apr. 11, 2025).

[28] *See* STAPE, STAPE IS SERVER-SIDE TRACKING, https://stape.io (Stape provides an "[a]ll-in-one platform designed to simplify server-side tracking. Industry leaders and top companies choose

unique pseudo-id for a user" and that by "[u]sing the [AUID] … information, Google can internally retrieve and match the User-provided data [] that was sent earlier."[29]



22.     That Defendant enables Google Signals (which "associates [data] with user[s'] … Google accounts," for "users who have signed in … and who have turned on Ads Personalization"[30]) to pair Website users' identities and video-viewing information is shown by the green highlights in this screenshot of the Website's tracker settings.

23.     That Defendant enables Google cookies (which allow Google to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite"[31]) to pair Website users' identities and video-viewing information is shown by the following cookies table. The cookies table reveals that when a user accesses the Becker Website while logged in to a

---

[Stape] to boost data quality and … configure server-side tracking using the Google Tag Manager[.]").

[29] Giovani Ortolani Barbosa, *One of the Reasons Why Google Ads Conversion Tags on GTM are showing the "Failed" Status*, LINKEDIN (Jan. 23, 2025), https://www.linkedin.com/pulse/one-reasons-why-google-ads-conversion-tags-gtm-failed-giovani-ftghf/ (last accessed June 19, 2025).

[30] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; *see also* GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

[31] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the _ga; _ga_<wpid>; NID; _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDCC; _Secure-1PSIDTS; _Secure-3PAPISID; _Secure3PSID; _Secure-3PSIDCC; and _Secure-3PSIDTS cookies:

| Name | Value | Domain |
|---|---|---|
| _ga | ████████████ | .becker.com |
| _ga_ZYBPGW6PN4 | ████████████████████ | .becker.com |
| _gcl_au | ██████████████ | .becker.com |
| __Secure-1PAPISID | ████████████████ | .google.com |
| __Secure-1PSID | ██████████████████████ | .google.com |
| __Secure-1PSIDCC | ██████████████████████ | .google.com |
| __Secure-1PSIDTS | ██████████████ | .google.com |
| __Secure-3PAPISID | ████████████████ | .google.com |
| __Secure-3PSID | ██████████████████████ | .google.com |
| __Secure-3PSIDCC | ██████████████████████ | .google.com |
| __Secure-3PSIDTS | ██████████████ | .google.com |
| AEC | ████████████ | .google.com |
| APISID | ████████████████ | .google.com |
| HSID | ██████████ | .google.com |
| NID | ██████████████████ | .google.com |
| SAPISID | ████████████████ | .google.com |
| SEARCH_SAMESITE | ██████ | .google.com |
| SID | ██████████████████████ | .google.com |
| SIDCC | ████████████████████ | .google.com |
| SSID | ██████████ | .google.com |
| DV | ████████████████████ | www.google.com |

24.     The _ga and ga_<wpid> cookies are "used to identifier users[.]"[32]  The _ga and ga_<wpid> cookies have a lifespan of 2 years.[33]

25.     The NID cookie "is used to collect website statistics and track conversion rates and Google ad personalization[.]"[34]  The NID cookie has a lifespan of 1 year.[35]

---

[32] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.  Note, the _ga and ga_<wpid> cookies are first-party cookies, while the other cookies are third-party cookies.  A first-party cookie is "created by the website the user is visiting" – i.e., the Website. PC MAGAZINE, FIRST-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/first-party-cookie.  A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Google. PC MAGAZINE, THIRD-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/third-party-cookie.

[33] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[34] Id.

[35] Id.

26.     The _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDC; and _Secure-1PSIDTS cookies are "[t]argeting cookie[s u]sed to create a user profile and display relevant and personalised Google Ads to the user."[36]  The _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDC; and _Secure-1PSIDTS cookies have a lifespan of 2 years.[37]

27.     The _Secure-3PAPISID cookie "[p]rofiles the interests of website visitors to serve relevant and personalised ads through retargeting."[38]  The _Secure-3PAPISID cookie has a lifespan of 2 years.[39]

28.     The _Secure3PSID cookie is a "[t]argeting cookie[ u]sed to profile the interests of website visitors and display relevant and personalised Google ads."[40]  The _Secure3PSID cookie has a lifespan of 2 years.[41]

29.     The _Secure-3PSIDCC and _Secure-3PSIDTS cookies are "[t]argeting cookie[s u]sed to create a user profile and display relevant and personalised Google Ads to the user."[42]  The _Secure-3PSIDCC and _Secure-3PSIDTS cookies have a lifespan of 2 years.[43]

30.     Even when a when a user accesses the Website while not logged in to a Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the _ga and _ga_<wpid> cookies:

| Name | Value | Domain ▲ |
|---|---|---|
| _ga | ███████ | .becker.com |
| _ga_ZYBPGW6PN4 | ████████████ | .becker.com |
| _gcl_au | ██████ | .becker.com |

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

### C.    Meta

31.    When a Becker user watches a pre-recorded video on the Website, Defendant

discloses to Meta: (i) the user's hashed phone number; (ii) the user's "Facebook browser ID

value [] stored in the _fbp browser cookie"[44]; and (iii) the title and URL of the video the user is

watching, along with video interactions.  This is evinced by the following Website transmissions.



[44] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com
/docs/marketing-api/conversions-api/parameters/customer-information-parameters/.  *See also*
META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/docs/
marketing-api/conversions-pi/parameters/fbp-and-fbc.

| Request URL | https://www.facebook.com/tr/?id=180160859381814&ev=SubscribedButtonClick&dl=https%3A%2F%2Fcpelearning.becker.com%2Fcourses%2FCPEC-43249%2Fdetail&rl=https%3A%2F%2Fcpelearning.becker.com%2F&if=false&ts=1750091337652&cd[buttonFeatures]=%7B%22classList%22%3A%22sc-dycHyt%20jvAZz%20sc-bWQvJa%20KVVQs%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22Play%20course%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22type%22%3Anull%2C%22name%22%22%3A%22%22%2C%22value%22%3A%22%22%7D&cd[buttonText]=Play%20course&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Conflict%20Resolution%22%7D&cd[parameters]=%5B%5D&sw=1280&sh=720&v=2.9.208&r=stable&a=tmSimo-GTM-WebTemplate&ec=1&o=12318&fbp=fb.1.1750090502098.747948279138879582&cs_est=true&ler=other&it=1750091334318&coo=false&es=automatic&tm=3&cdl=&rqm=GET |
|---|---|
| id | 180160859381814 |
| ev | SubscribedButtonClick |
| dl | https://cpelearning.becker.com/courses/CPEC-43249/detail |
| rl | https://cpelearning.becker.com/ |
| if | false |
| ts | 1750091337652 |
| cd[buttonFeatures] | {"classList":"sc-dycHyt jvAZz sc-bWQvJa KVVQs","destination":"","id":"","imageUrl":"","innerText":"Play course","numChildButtons":0,"tag":"button","type":null,"name":"","value":""} |
| cd[buttonText] | Play course |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Conflict Resolution"} |
| cd[parameters] | [] |
| sw | 1280 |
| sh | 720 |
| v | 2.9.208 |
| r | stable |
| a | tmSimo-GTM-WebTemplate |
| ec | 1 |
| o | 12318 |
| fbp | fb.1.1750090502098.747948279138879582 |

| Request URL | https://www.facebook.com/tr/?id=180160859381814&ev=SubscribedButtonClick&dl=https%3A%2F%2Fcpelearning.becker.com%2Fcourses%2FCPEC-43249%2Fdetail&rl=https%3A%2F%2Fcpelearning.becker.com%2Fmedia%2F85510584%2Fwatch&if=false&ts=1750091433285&cd[buttonFeatures]=%7B%22classList%22%3A%22sc-dycHyt%20flZLHb%20sc-eTlgpb%20fOwuxp%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22Resume%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22type%22%3Anull%2C%22name%22%3A%22%22%2C%22value%22%3A%22%22%7D&cd[pageFeatures]=%7B%22title%22%3A%22Conflict%20Resolution%22%7D&cd[parameters]=%5B%5D&sw=1280&sh=720&v=2.9.208&r=stable&a=tmSimo-GTM-WebTemplate&ec=2&o=12318&fbp=fb.1.1750090502098.747948279138879582&cs_est=true&ler=other&it=1750091346289&coo=false&es=automatic&tm=3&cdl=&exp=k2&rqm=GET |
|---|---|
| id | 180160859381814 |
| ev | SubscribedButtonClick |
| dl | https://cpelearning.becker.com/courses/CPEC-43249/detail |
| rl | https://cpelearning.becker.com/media/85510584/watch |
| if | false |
| ts | 1750091433285 |
| cd[buttonFeatures] | {"classList":"sc-dycHyt flZLHb sc-eTlgpb fOwuxp","destination":"","id":"","imageUrl":"","innerText":"Resume","numChildButtons":0,"tag":"button","type":null,"name":"","value":""} |
| cd[buttonText] | Resume |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Conflict Resolution"} |
| cd[parameters] | [] |
| sw | 1280 |
| sh | 720 |
| v | 2.9.208 |
| r | stable |
| a | tmSimo-GTM-WebTemplate |
| ec | 2 |
| o | 12318 |
| fbp | fb.1.1750090502098.747948279138879582 |

13

32.     That Defendant discloses to Meta, via the Meta Pixel, the video title and the URL of the video the user is watching, along with video interactions, is shown by the yellow highlights.  Here the title of the video was "Conflict Resolution[.]"  The URLs of the video were "https://cpelearning.becker.com/courses/CPEC-43249/detail" (video overview) and "https://cpelearning.becker.com/media/85499641/watch" (video player).  The video interactions were titled "Play[,]" "Play course[,]" and "Resume[,]" showing that a user clicked on buttons to play and resume the video.

33.     That Defendant disclosed to Meta the user's "Facebook browser ID value []
stored in the _fbp browser cookie"[45] is shown by the red highlights (here, "fb.1.1750090502098.747948279138879582").  According to Meta, browser ID values are formatted as "fb.${subdomain_index}.${creation_time}.${random_number}."[46]

34.     Per the Meta "Cookies Policy," the "'_fbp' cookie *identifies browsers* for the purposes of providing advertising and site analytics services[.]"[47]  Specifically, the browser ID value, along with other "customer information parameters[,]" is ultimately "matched to Meta accounts."[48]  Thus, through the Facebook browser ID value, an ordinary person can easily identify a specific user, as well as which specific user watched what video(s).

---

[45] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/.  *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/ docs/marketing-api/conversions-pi/parameters/fbp-and-fbc.

[46] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com/docs/ marketing-api/conversions-api/parameters/customer-information-parameters/.

[47] META, COOKIES POLICY, https://www.facebook.com/privacy/policies/cookies (emphasis added).

[48] FACEBOOK, ABOUT EVENT MATCH QUALITY, https://www.facebook.com/business/help/765081237991954.

35.     That Defendant discloses to Meta, via the Meta Pixel, the user's hashed phone

number is shown by the blue highlight (here, "f590f9c3f1a0cbadb239dd5bb6297c661b5efab4

d0b0a6fa70bdf09c79e49b35").

36.     As the government,[49] trade groups,[50] and courts[51] agree, phone numbers

constitute personally identifiable information ("PII").  Indeed, an ordinary person can use a

phone number to uniquely identify another individual, as there exist multiple services that enable

individuals to look up who owns a phone number.[52]

---

[49] *See, e.g.*, DEP'T OF HOMELAND SECURITY, HANDBOOK FOR SAFEGUARDING SENSITIVE PII,
https://www.dhs.gov/sites/default/files/2024-03/17_1204_priv_handbooksafeguarding
sensitivepii_rev3_047-01-007.pdf, at 5-6 ("'Personally Identifiable Information' or PII, [] is any
information that permits the identity of an individual to be directly or indirectly inferred,
including any other information that is linked or linkable to that individual[.] … PII includes
your name and your work email, address, and phone"); FEDERAL TRADE COMMISSION, ON THE
LEAKAGE OF PERSONALLY IDENTIFIABLE INFORMATION VIA ONLINE SOCIAL NETWORKS,
https://www.ftc.gov/sites/default/files/documents/public_comments/privacy-roundtables-
comment-project-no.p095416-544506-00010/544506-00010.pdf, at 2 ("A recent report identifies
a number of examples that may be considered PII[, ] including: Name (full name, maiden name,
mother's maiden name), personal identification number (e.g., Social Security Number), address
(street or email address), telephone numbers[.]").

[50] *See, e.g.*, NETWORK ADVERTISING INITIATIVE, NAI CODE OF CONDUCT (2020),
https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf, at 8 ("Personally-Identified
Information (PII) is any data linked, or intended to be linked, to an identified individual,
including name, address, telephone number, email address[.]").

[51] *See, e.g.*, *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1023 (D.
Minn. 2016) ("[I]t would be absurd to say that a person's phone number or physical address is
not typically personally identifying information. An IP address, a physical address, and a phone
number are all modern day hallmarks of how a person may be identified."); *Brown v. Maxwell*,
929 F.3d 41, 48 n.22 (2d Cir. 2019) (permitting "redactions to protect personally identifying
information such as personal phone numbers"); *Hadley v. Kellogg Sales Co.*, 2018 WL 7814785,
at *3 (N.D. Cal. Sept. 5, 2018) ("[C]ompelling reasons exist to seal sensitive personal
information such as financial information, medical records and conditions, phone numbers, and
addresses."); *Snapkeys, Ltd. v. Google LLC*, 2021 WL 1951250, at *3 (N.D. Cal. May 14, 2021)
(collecting cases sealing personally identifying information, including phone numbers).

[52] *See, e.g.*, https://web.archive.org/web/20250703022426/https://www.whitepages.com/reverse-
phone ("Reverse Phone Lookup[:] Find out who called you. … A reverse phone number lookup
is a search that starts with a phone number and reveals details about the caller, such as their full
name, phone carrier, location, and [more]"); https://web.archive.org/web/20250701021720/
https://www.intelius.com/reverse-phone-lookup/ ("Reverse Phone Number Lookup

37.     Although Defendant discloses SHA-256 hashed[53] phone numbers, the reality is that, even in hashed form, phone numbers are traceable to individuals.[54]  In fact, the Federal Trade Commission has warned companies as recently as July 2024 that hashing is an insufficient method of anonymizing information.[55]  Meta, itself, informs advertisers that it can "use[] ... hashed information and compare[] it to our own hashed information to build custom audiences or more accurately determine which people took action in response to your ad."[56]  Thus, even in hashed form, phone numbers are traceable to individuals.

---

Look up a phone number to find owner information, carrier details, and more! … You may find a full name, known aliases, and even possible photos of the phone number's potential owner."); https://web.archive.org/web/20250620092901/https://www.truthfinder.com/reverse-phone-lookup/ ("Reverse Phone Lookup[:] Look up almost any type of phone number and reveal the owner[.] … You simply enter a phone number, and a reverse phone lookup will scan public records for information related to the owner of the phone number and carrier. These details could include the full name of the person the number is registered to, the location history of the phone number, and social media profiles associated with the number.").

[53] *See, e.g.*, CODEACADEMY, WHAT IS HASHING?, https://www.codecademy.com/resources/blog/what-is-hashing/ ("Hashing is the process of converting data — text, numbers, files, or anything, really — into a fixed-length string of letters and numbers. Data is converted into these fixed-length strings, or hash values, by using a special algorithm called a hash function.").

[54] *See, e.g.*, FEDERAL TRADE COMMISSION, DOES HASHING MAKE DATA "ANONYMOUS"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique … the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); STEVEN ENGLEHARDT ET AL., I NEVER SIGNED UP FOR THIS! PRIVACY IMPLICATIONS OF EMAIL TRACKING, https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy protection. This is folk knowledge in the security community, but bears repeating."); MARTECH, FTC PRIVACYCON: YOUR EMAIL ADDRESS IS LEAKING AND VULNERABLE, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] … Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[55] FEDERAL TRADE COMMISSION, NO, HASHING STILL DOESN'T MAKE YOUR DATA ANONYMOUS (July 24, 2024) ("[H]ashes aren't 'anonymous' and can still be used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized.").

[56] META, ABOUT HASHING CUSTOMER INFORMATION, https://www.facebook.com/business/help/112061095610075?id=2469097953376494 (last accessed June 19, 2025).

III.    **DEFENDANT DISCLOSES CLASS MEMBERS' PII AND VIDEO-VIEWING INFORMATION TO GOOGLE AND META FOR THE PURPOSES OF MARKETING, ADVERTISING, AND ANALYTICS**

38.    Defendant transmits the foregoing PII and video-viewing information to Google and Meta so that Google and Meta can help Defendant launch marketing campaigns, target specific users with advertising, and analyze Website user data.

A.    **Google Analytics**

39.    According to Google, "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]."[57]  Google describes these reports and insights as follows:[58]

> Real-Time Reporting
> - Monitor activity on your site or app as it happens.
>
> Acquisition Reports
> - See how users land on your site or app and understand the effectiveness of your marketing.
>   - User Acquisition[:] Discover how users reach your site or app through different paid and organic sources.
>   - Traffic Acquisition[:] See a session-based view of traffic and engagement on your site or app through different paid and organic traffic sources.
>
> Engagement Reports
> - Better understand what content drives engagement and conversions on your site or app.
>   - Events Report[:] Get a detailed view of user actions, system events, or errors.
>   - Conversion Report[:] See how all your marketing channels are working together to drive conversions.
>   - Pages and Screen Report[:] See which web pages and app screens users engage with the most.
>
> Monetization Reports
> - See how much revenue your site or app generates whether it's from ecommerce, subscriptions, or ads.
>   - Ecommerce[:] Analyze purchase activity including product and transaction information, average purchase revenue, average

---

[57] GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447.

[58] GOOGLE, ANALYTICS FEATURES, https://marketingplatform.google.com/about/analytics/features/.

purchase revenue per user, and other data.
- o In-App Purchases[:] Improve your app monetization with insights about the highest performing products and subscriptions.
- o Publisher Ads[:] See ad revenue that your app generates using the Google Analytics for Firebase SDK.

40.    This gathered information is used for marketing and advertising.  Specifically, Google "Analytics is designed to work seamlessly with other Google solutions and partner products" and can "unlock deeper insights into [advertising] campaign performance from Google Ads, Display & Video 360, and Search Ads 360."[59]  Google Analytics integrates with Google Ads so that clients, like Defendant, can "[s]ee [] Ads data together with [] website and app performance data in the Google Ads reports in Analytics."[60]  Google Analytics integrates with Display & Video 360 and Search Ads so that clients, like Defendant, can "[e]xport conversions created in Analytics[,]" "create audiences that are predicted to take [certain] actions[,]" and "use them for automated bidding" in Display & Video 360 and Search Ads.[61]

41.    Gathered information is also used for analytics.  With Google Analytics, clients, like Defendant, can "apply[] Google's machine learning models, … analyze [] data[,] and predict future actions people may take, like making a purchase or churning."[62]  Additionally, Google Analytics can "automatically detect and surface actionable insights from [gathered] data like important changes, new trends, and other growth opportunities[.]"[63]  And Google can provide "[a]nswers to [marketers' q]uestions … in natural language[,] … to quickly find [] metric[s], report[s], or insights[.]"[64]  Through Google Analytics' "[u]ser [e]xploration" functions, it is even

---

[59] Id.

[60] Id.

[61] Id.

[62] Id.

[63] Id.

[64] Id.

possible to "[s]elect specific groups of users and drill down deeper to understand how those users engage with [a] site or app."[65]

42.    Thus, Google Analytics furnishes "a complete understanding of [] customers across devices and platforms[,] … [and] gives [] the tools[] … to understand customer journey and improve marketing ROI."[66]

43.    Defendant uses Google Analytics for such marketing, advertising, and analytics purposes.

### B.    Google Conversion Linker

44.    Google's Conversion Linker[67] is used for "conversion tracking," which is the process of "show[ing ] what happens after a customer interacts with [an] ad[] -- whether they purchased a product, signed up for [a] newsletter, called [a] business, or downloaded [an] app."[68] "When a customer completes [such] an action that [a Google client has] defined as valuable, these customer actions are called conversions."[69]

45.    In technical terms, Google explains that "[w]hen people … click[] a text ad or view[] a video ad, Google [] stores cookies that contain information about the interaction, and a unique identifier for a user or the ad click that brought the user to [a] site. When someone converts on [a] website, the conversion tracking tag … reads this cookie and sends it back to Google [] with the conversion information."[70]

---

[65] *Id.*

[66] GOOGLE, ANALYTICS OVERVIEW, https://marketingplatform.google.com/about/analytics/.

[67] GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/7549390.

[68] GOOGLE, ABOUT CONVERSION TRACKING, https://support.google.com/google-ads/answer/1722022.

[69] *Id.*

[70] GOOGLE, HOW GOOGLE ADS TRACKS WEBSITE CONVERSIONS, https://support.google.com/google-ads/answer/7521212.

46.      This gathered information is used for marketing and advertising.  Google states that "conversions are eligible for bidding and reporting in Google Ads."[71]  That is, Google clients who track conversions can "[u]se Smart Bidding strategies (such as Maximize Conversions, target CPA, and target ROAS) that automatically optimize [] campaigns according to [specific] business goals."[72]

47.      Gathered information is also used for analytics.  Google's "conversion tags help to build reports that show [] what happens after a customer clicks on [] ads[.]"[73]  For example, advertisers can "[f]ind out how many customers may be interacting with [their] ads on one device or browser and converting on another[, by] … view[ing] cross-device, cross-browser, and other conversion data … reporting[.]"[74]  Clients can also "[l]earn which keywords, ads, ad groups, and campaigns are best at driving valuable customer activity[, to better u]nderstand [their] return on investment (ROI) and make better informed decisions about [] ad spend."[75]

48.      Defendant uses Google's Conversion Linker for such marketing, advertising, and analytics purposes.

C.      **Google Signals**

49.      Through "Google signals[,] … [Google] Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]"[76]   "This association of data

---

[71] GOOGLE, KEY EVENT, CONVERSION & PURCHASE DEFINITION, https://support.google.com/google-ads/answer/6365.

[72] GOOGLE, ABOUT CONVERSION TRACKING, https://support.google.com/google-ads/answer/1722022.

[73] GOOGLE, GOOGLE ADS CONVERSIONS, https://support.google.com/tagmanager/answer/6105160.

[74] GOOGLE, ABOUT CONVERSION TRACKING, https://support.google.com/google-ads/answer/1722022.

[75] Id.

[76] GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042.

with these signed-in users is used to enable cross-device remarketing, and cross-device key

events export to Google Ads."[77]  Thus, with Google Signals, "Google is able to develop a

holistic view of how those users interact with an online property from multiple browsers and

multiple devices. For example, [one] can see how users browse products on [a] site from a

phone, and later return to complete purchases from a tablet or laptop."[78]

50.    This gathered information is used for marketing and advertising.  Namely,

"Google signals enables[ r]emarketing[;] … Google Ads and other Google Marketing Platform

advertising products can use third-party advertising identifiers enabled by Google signals to

serve ads in … remarketing campaigns to Google users[.]"[79]  Put simply, "[r]emarketing lets

[Google's clients] re-engage users based on their behavior in [an] app or on [a] site. When users

fit the behavioral profile for an audience (for example, Reached Level 9), they are added to that

audience and are eligible to see ads related to that earlier behavior."[80]

51.    Gathered information is also used for analytics.  Google Signals helps "[r]eport on

cross-device user counts[,]" "[r]eport and understand different groups of users based on the

different device combinations they use[,]" [r]eport on and understand [] cross-device marketing

performance (e.g., channels, campaigns, etc.)[,]" and "[u]nderstand the customer journey across

devices by analyzing user-based reports (active users, funnels, pathing)[.]"[81]  In this sense,

"Google signals enables[] … Google Analytics [to] collect[] additional information about

---

[77] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES,
https://support.google.com/analytics/answer/9445345.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

demographics and interests … from users who are signed in to their Google accounts[.]"[82]

52.    Defendant uses Google Signals for such marketing, advertising, and analytics purposes.

### D.    Meta Pixel

53.    According to Meta, "[t]he Meta Pixel is a snippet of JavaScript code that allows [clients] to track visitor activity on [their] website[s]. It works by loading a small library of functions which [] can [be] use[d] whenever a site visitor takes an action (called an event) that [a client] want[s] to track (called a conversion)."[83]  The Meta Pixel "relies on Facebook cookies, which enable [Meta] to match [] website visitors to their respective Facebook User accounts."[84] Meta offers a menu of "standard events" that can be tracked, including what content a visitor views or purchases.[85]  Advertisers can also create their own tracking parameters by building a "custom event."[86]

54.    This gathered information is used for marketing and advertising.  Specifically, the Meta Pixel's library of functions can be used to "[t]rack conversions [] in the Ads Manager[,] … to define custom audiences for ad targeting, [and] for Advantage+ catalog ads campaigns[.]"[87]

55.    Taking these one by one, "track[ing ] website visitors' actions[,] also known as

---

[82] *Id.*

[83] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[84] META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started.

[85] META, SPECIFICATIONS FOR META PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655.  *See also* META, STANDARD EVENTS, https://developers.facebook.com/docs/meta-pixel/reference.

[86] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005; *see also* META, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[87] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

conversion tracking[,] ... can be used to analyze the effectiveness of [a] conversion funnel and to calculate [] return[s] on ad investment[s]."[88]  Once a client is "tracking conversions, [Meta] recommend[s] that [the client] use them to … optimize [] ads for website conversions."[89]

56.    A "custom audience is an ad targeting option"[90] that can be used by advertisers, like Defendant, "to find people most likely to respond to [their] ad[s]."[91]  Clients can "[c]reate [an] online audience based on the traits of who [they] want to see [their] ad[s], and narrow down [their] ad[s'] audience[s] by interests, gender or location and use ad targeting to find the people most likely to take action.  Once [an] ad starts running, [Meta's] system will learn who is engaging with it and, over time, narrow [the] audience [to help] reach more of the right people."[92]  Advertisers can target, *inter alia*, "[n]ew customers with specific interests or from a specific location"; "[p]eople who have already shown an interest in [a client's] business"; and "[p]eople who share interests with [a client's] current customers."[93]

57.    "Advantage+ catalog ads are dynamically created by populating an ad template with product information found in a data feed. This allows [Meta clients] to create thousands of ads without having to configure each of them individually."[94]  Clients "can also use Advantage+

---

[88] META, CONVERSION TRACKING, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking.

[89] *Id.*

[90] META, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227.

[91] META, AUDIENCE AD TARGETING, https://www.facebook.com/business/ads/ad-targeting.

[92] *Id.*

[93] *Id.*

[94] META, META PIXEL FOR ADVANTAGE+ CATALOG ADS, https://developers.facebook.com/docs/meta-pixel/get-started/advantage-catalog-ads.

catalog ads to target visitors based on how they have interacted with [their] website in the past."[95]

58.    In short, Meta states[96] that the Meta Pixel can be used to:

- Make sure your ads are shown to the right people. Find new customers, or people who have visited a specific page or taken a desired action on your website.
- Drive more sales. Set up automatic bidding to reach people who are more likely to take an action you care about, like making a purchase.
- Measure the results of your ads. Better understand the impact of your ads by measuring what happens when people see them.

59.    Gathered information is also used for analytics.  Namely, the Meta Pixel helps "understand[] the actions people take on [a] website."[97]  "Examples of actions include adding an item to their shopping cart or making a purchase. The pixel receives these actions, or events, which [] can [be] view[ed] on [the] Meta Pixel page in [the Meta] Events Manager. From there, [a client will] be able to see the actions that [its] customers take."[98]  This allows Meta clients to "segment [their] website visitors into groups based on the actions they have taken on [their] website."[99]  Additionally, with the Meta Pixel, clients can "[a]dd events on the pages that matter to [their] business to help [] understand [] customers' journey[s].  If [one were to] set up events along their path (for example, from product page views to a purchase) it may help [] measure and optimize [] ads for the conversions that mean the most to [one's] business."[100]

---

[95] *Id.*

[96] META, ABOUT META PIXEL, https://www.facebook.com/business/help/742478679120153.

[97] *Id.*

[98] *Id.*

[99] META, CUSTOM AUDIENCES, https://developers.facebook.com/docs/meta-pixel/implementation/custom-audiences.

[100] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005.

60.     Defendant uses the Meta Pixel for such marketing, advertising, and analytics purposes.

### III.    DEFENDANT KNOWINGLY DISCLOSES CLASS MEMBERS' PII AND VIDEO-VIEWING INFORMATION TO GOOGLE AND META

61.     Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses Becker Website users' personally identifiable information and video-viewing information to Google and Meta.

62.     First, as outlined above, Defendant "knew that it was collecting data from users that identified personalized information about them because, in exchange for the data, [Google and Meta] provided [Defendant] with analytics allowing [Defendant] to provide advertisements tailored to specific users." *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 31 (D. Mass. 2024)

63.     Indeed, Defendant admits in its "Online Cookie Policy"—which is not "a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" pursuant to 18 U.S.C. § 2710(b)(2)(B)(i)—that "*[w]e use Google Analytics* … [which] uses Cookies or other tracking technologies to help us analyze how users interact with the Sites and Services, compile reports on their activity, and provide other services related to their activity and usage. … We may use Cookies and similar technologies third-party vendors provide to collect information on user behavior (e.g., screens and pages visited, buttons and links clicked, limited information entered, and user taps and mouse movements)."[101]  Defendant also states in its "Online Cookie Policy" that "*[t]argeting [c]ookies* … may be set through our Sites

---

[101] BECKER, ONLINE COOKIE POLICY, https://www.becker.com/online-cookie-policy (last accessed June 19, 2025) (emphasis added).

by our advertising partners. They may be used by those companies to **build a profile of your interests and show you relevant ads** on other websites."[102]

64.    Second, the code for the Google and Meta tracking technologies at issue did not spontaneously appear on the Becker Website (which Defendant owns and operates).  Instead, Defendant intentionally and knowingly integrated the foregoing trackers (the Meta Pixel, as well as Google Analytics, Google Conversion Linker, Google Signals, and Google's tags/libraries associated therewith) into the HTML documents and/or other libraries defining the contents of the Website.  As to Google Analytics, Google explains: "To begin seeing data in your new Google Analytics 4 property, you'll need to do one of the following: Add the tag to a website builder or CMS-hosted website … Add the Google tag directly to your web pages … [or a]dd your tag using Google Tag Manager[.]"[103]  As to Google Conversion Linker, Google explains: "To set up a conversion linker tag: Click Tags and then New. Click Tag Configuration and select Conversion Linker. Select a trigger. In most cases, you should use a trigger that fires on all page views, or on specific page views where site visitors will land after an ad is clicked. Save and publish your tag configuration."[104]  As to Google Signals, Google explains: "[To a]ctivate Google signals[, 1. I]n Admin, under Data collection and modification, click Data Collection. … 2. Turn on the switch for Enable Google signals data collection."[105]  As to the Meta Pixel, Meta

---

[102] *Id.* (emphasis added).

[103] GOOGLE, [GA4] SET UP ANALYTICS FOR A WEBSITE AND/OR APP, https://support.google.com/analytics/answer/9304153.

[104] GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/7549390.

[105] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345.

explains: "to set up a Meta Pixel[,] … set up the [pixel] base code on your website. … [To do so, g]o to Meta Events Manager."[106]

65.    Therefore, Defendant knowingly and intentionally provides personal information and video-viewing information to Google and Meta for marketing, advertising, and analytics services.

## VIII.   EXPERIENCE OF PLAINTIFF

66.    Plaintiff Michael Garcia is a resident and citizen of Melrose, Massachusetts.  In or around January 2024, Plaintiff created a Becker account to access his Certified Public Accountant (CPA) exam review subscription.  Shortly thereafter, Plaintiff began using the Becker Website and his Becker account to watch various pre-recorded videos.  Plaintiff most recently watched a pre-recorded video on the Website, using his Becker account, in or around June 2025.

67.    Plaintiff was logged into his Google account when he accessed the Becker Website and his Becker account.  Plaintiff created his Google account prior to creating his Becker account.  Plaintiff had personalized adds turned on.

68.    Plaintiff also maintains a Facebook account associated with the same phone number used for his Becker account.  Plaintiff signed up for and created his Facebook account over ten (10) years ago.

---

[106] META, HOW TO SET UP AND INSTALL A META PIXEL, https://www.facebook.com/business/help/ 952192354843755?id=1205376682832142.  *See also* META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started ("Before you can install the Pixel, you will need your Pixel's base code, which you can find in the Ads Manager > Events Manager.").

69.     By subscribing to and paying for a Becker Certified Public Accountant (CPA) exam review subscription, Plaintiff received access to watch exclusive Website pre-recorded videos, in addition to other benefits.  Specifically, Plaintiff watched pre-recorded videos related to the Financial Accounting and Reporting ("FAR") CPA exam.

70.     At all relevant times, Plaintiff never consented to, agreed to, or otherwise permitted Defendant to disclose his PII and video-viewing information to third parties, including Google and Meta.

71.     Likewise, Defendant never gave Plaintiff the opportunity to prevent the disclosure of his PII and video-viewing information to third parties, including Google and Meta.

72.     Nevertheless, each time Plaintiff viewed a pre-recorded video on the Becker Website, Defendant disclosed Plaintiff's PII and video-viewing information to Google and Meta via the Meta Pixel, as well as Google Analytics, Google Conversion Linker, Google Signals, and Google's tags/libraries associated therewith.  Specifically, each time Plaintiff viewed a pre-recorded video on the Becker Website, Defendant disclosed to Google: (i) Google Signals, which "associates [data] with user[s'] … Google accounts," for "users who have signed in …  and who have turned on Ads Personalization"[107]; (ii) Google cookies, which allow Google to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite"[108]; (iii) the Google Advertiser user ID ("AUID"), which is "a unique identifier for a

[107] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; see also GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

[108] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

user" used in connection with advertising[109]; and (iv) video title and URL. Each time Plaintiff viewed a pre-recorded video on the Becker Website, Defendant disclosed to Meta: (i) hashed phone number; (ii) the "Facebook browser ID value [] stored in the _fbp browser cookie"[110]; and (iii) video title and URL, along with video interactions.

73.     Using this information, Google and Meta were able to identify Plaintiff and attribute his video viewing records to an individualized profile of Plaintiff. Indeed, even an ordinary person could identify Plaintiff using the data Defendant disclosed to Google and Meta. Google and Meta compiled Plaintiff's PII and activity on the Becker Website (including video-viewing information), which Defendant used and continues to use for marketing, advertising, and analytics purposes.

## PARTIES

74.     Plaintiff Michael Garcia is a resident of Melrose, Massachusetts and has an intent to remain there, and is therefore a citizen of Massachusetts.

75.     Defendant Becker Professional Development Corporation is a Delaware corporation with its principal place of business at 399 South Spring Avenue, Suite 108, St. Louis, Missouri 63110. Defendant Becker Professional Development Corporation operates the Becker Website, which is used throughout Massachusetts and the United States.

## JURISDICTION AND VENUE

76.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

---

[109] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/google-ads/answer/9148089?hl=en.

[110] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/. *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/docs/ marketing-api/conversions-pi/parameters/fbp-and-fbc.

77.     This Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

78.     This Court has personal jurisdiction over Defendant because Defendant collected and disseminated the personally identifiable information and video-viewing information giving rise to this lawsuit in this District, Defendant conducts substantial business in this District, and the conduct giving rise to this action arises out of and relates to that business.  Indeed, Defendant purposefully avails itself of the benefits of this District by selling subscriptions to persons whom Defendant knows to reside in this District (based on billing information provided to Defendant at checkout).

79.     This Court also has personal jurisdiction over Defendant because Defendant ships textbooks to users' addresses, including Massachusetts users.  This is evinced by the following image from the Becker Website, where Defendant boasts that users who purchase "CPA *Online* Courses & Exam Review" can additionally receive "Best-in-class *printed* Textbooks." (Emphasis added).

//

//

//

//

//

//

//



80.    This Court also has personal jurisdiction over Defendant because the Becker Website specifically targets Massachusetts residents.  The Website advertises Becker's "***Massachusetts*** CPA license renewals" and encourages users to click to "[f]ind a course to fit your schedule[.]"  (Emphasis added).

//

//

//

31



81.     Defendant also advertises that "Becker's CPE course, … will meet your

*Massachusetts* ethics requirement."  (Emphasis added).



82.     Defendant encourages users to interact with its Website and "[f]ind your local

Becker representative."  To do so, Website users may utilize the drop-down menu and select

"Massachusetts."  This allows Website users to find ***Massachusetts-specific Becker***

***representatives.***  This is evinced by the following image, where "Michael Ceglie" is listed as

Becker's "Account Manager Statewide" and "Kristin Curcuru" is listed as Becker's "Regional

Manager" for Massachusetts:



83.    Additionally, Defendant has ***partnered with the Massachusetts Society of CPAs***.

Defendant explains that "[t]he following national and state societies partner with Becker to

support their members' professional development needs and to offer special pricing on Becker's

CPA Exam Review."  Thus, Defendant partners with a Massachusetts organization as part of its

product offering and value.  *See* next page.

//

//

//

//

//

//



84.    Finally, the Becker Website shows that Defendant has a "direct-bill or preferred-provider arrangement" with various Massachusetts entities.  Entities with whom Defendant has an arrangement include (1) "The Boston Foundation," which Becker lists as "***State & Local Government Agency-Paid***"; (2) the "***University*** of Massachusetts - Amherst"; (3) the "***University*** of Massachusetts – Dartmouth"; and (4) the employer "PKF JND, P.C."  *See* next page.

//

//

//

//

//

//





85.    Defendant's arrangements with various Massachusetts entities—including public universities—are designed to, *inter alia*, "bill" Massachusetts entities for offerings to individual

Website users relating to Becker's "CPA, CMA, CIA or EA Exam or [] CPE credits with Becker." In other words, these arrangements involve the very products at issue in this First Amended Complaint ("FAC").

86.    Moreover, the Court has specific personal jurisdiction over Defendant because Defendant obtained valuable personal data about Massachusetts consumers for its own commercial gain. *See, e.g.*, *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756 (9th Cir. 2025) (en banc). Defendant knows where users of its Website are located based on users' IP addresses[111] and knowingly discloses user information to third parties. Through those business activities, Defendant tortiously violated Plaintiff's privacy through its collection, maintenance, and/or sale of valuable personal data from Massachusetts consumers.

87.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## CLASS ALLEGATIONS

88.    **Class Definition:**  Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who created a Becker account, used the Website to watch a pre-recorded video, and subsequently had their PII disclosed to third parties (the "Class").

89.    Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

---

[111] *See, e.g.*, Diana Bocco, GEOTARGETLY, *IP Geolocation - How It Works*, https://geotargetly.com/blog/how-ip-geolocation-works ("At its core, IP geolocation involves the identification of an individual's or a device's geographical location based on their IP address. ... IP geolocation has significant implications for businesses ... Geolocation enables businesses to offer personalized user experiences.").

90. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Becker, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

91. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   (a)    whether Defendant collected Plaintiff's and Class Members' PII;

   (b)    whether Defendant unlawfully disclosed and continues to disclose Website users' PII, including their video-viewing records, in violation of the VPPA;

   (c)    whether Defendant's disclosures were committed knowingly; and

   (d)    whether Defendant disclosed Plaintiff's and Class Members' PII without consent.

92. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used a Becker account to watch pre-recorded videos on the Website and consequently had his PII and video-viewing information transmitted to third parties, Google and Meta, without his consent.

93. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of

the Class. Plaintiff has raised viable statutory claims, of the type reasonably expected to be raised by members of the Class, and Plaintiff will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this FAC to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

94.     **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation of the VPPA,
### 18 U.S.C. § 2710

95.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

96.     Defendant is a "video tape service provider" as defined by the VPPA because it "engages in the business, in or affecting interstate or foreign commerce, of rental, sale, or

delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as Defendant provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via the Website.

97.    Plaintiff and members of the Class are "consumers" as defined by the VPPA because they created Becker accounts with their personal information such as first and last name, email address, and phone number, paid for their subscriptions, obtained access to exclusive video content as a result, and subsequently watched videos through those accounts on the Becker Website.  18 U.S.C. § 2710(a)(1).  Under the VPPA, this means that they were "subscriber[s]" of "goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).

98.    Plaintiff and members of the Class viewed pre-recorded videos using the Becker Website.  During these occasions, Defendant disclosed Plaintiff's and Class Members' PII to third parties.  Specifically, Defendant disclosed to Google: (i) Google Signals, which "associates [data] with user[s'] … Google accounts," for "users who have signed in …  and who have turned on Ads Personalization"[112]; (ii) Google cookies, which allow Google to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite"[113]; (iii) the Google Advertiser user ID ("AUID"), which is "a unique identifier for a user" used in connection with advertising[114]; and (iv) video title and URL.  Defendant disclosed to Meta: (i) hashed phone

---

[112] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; *see also* GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

[113] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

[114] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/google-ads/answer/9148089?hl=en.

number; (ii) the "Facebook browser ID value [] stored in the _fbp browser cookie"[115]; and (iii) video title and URL, along with video interactions.

99.     The information disclosed by Defendant constitutes "personally identifiable information" because it makes it "reasonably and foreseeably likely to reveal which [Becker] videos [Plaintiff and members of the Classes] [] obtained." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016); *see also* 18 U.S.C. § 2710(a)(3).  Indeed, the information disclosed by Defendant to Google and Meta enables even an ordinary person to identify which specific videos were watched by Plaintiff and specific members of the Class.

100.     Defendant's transmissions of Plaintiff's and Class Members' PII to Google and Meta, via the Meta Pixel, as well as Google Analytics, Google Conversion Linker, Google Signals, and Google's tags/libraries associated therewith, constitute "knowing[] disclosures" of Plaintiff's and members of the Classes' "personally identifiable information" to a person as proscribed by the VPPA.  18 U.S.C. § 2710(a)(1).  Defendant "knew that [Becker] was collecting data from users that identified personalized information about them because, in exchange for the data, [Google and Meta] provided [Defendant] with analytics allowing [Defendant] to provide advertisements tailored to specific users." *Saunders,* 711 F. Supp. 3d at 31.

101.     Plaintiff and the Class Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties, including Google and Meta.

102.     Nor were Defendant's disclosures of Plaintiff's and Class Members' PII made in the "ordinary course of business" as the term is defined by the VPPA.  Defendant's disclosures

---

[115] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/. *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/docs/ marketing-api/conversions-pi/parameters/fbp-and-fbc.

to Google and Meta were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

103.    On behalf of himself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring that Defendant's conduct violates the statute referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For an award of statutory damages to the extent available;

(e)    For punitive damages, as warranted, in an amount to be determined at trial;

(f)    For prejudgment interest on all amounts awarded;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated:  October 22, 2025                      Respectfully submitted,

**BURSOR & FISHER, P.A**.

By: */s/ Yitzchak Kopel*
        Yitzchak Kopel

Yitzchak Kopel (BBO # 716245)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorney for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 22, 2025, I electronically filed the foregoing document

with the Court's CM/ECF system, which will provide e-mail notice to all counsel of record.

By: */s/ Yitzchak Kopel*
        Yitzchak Kopel