**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MICHAEL GARCIA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BECKER PROFESSIONAL DEVELOPMENT CORPORATION,

Defendant.

Case No. 1:25-cv-12157-JEK

**Leave to File Granted Dec. 23, 2025**
(ECF No. 26)

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiff Has Not Established Specific Jurisdiction Over Becker .......... 2

A. The Long-Arm statute does not confer personal jurisdiction over Becker . 2

1. Plaintiff's claim does not "arise from" Becker's transaction of business in Massachusetts under § 3(a) .......... 2

2. Plaintiff's claim does not "arise from" Becker's contracting to supply services or things in Massachusetts .......... 3

3. Becker did not cause Plaintiff's alleged injury while regularly soliciting business in Massachusetts .......... 5

B. Plaintiff has not established that personal jurisdiction over Becker comports with Due Process .......... 6

1. Plaintiff has not established purposeful availment by Becker .......... 6

2. Plaintiff has not established that relatedness and reasonableness are satisfied .......... 8

II. Plaintiff Has Failed to State a Claim Under the VPPA .......... 9

A. Plaintiff has not alleged Becker disclosed specific video material .......... 10

1. Disclosing the subject matter of a video is not sufficient .......... 10

2. Plaintiff has not alleged specific videos were disclosed .......... 12

B. Plaintiff has not alleged Becker disclosed information identifying him... 13

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. America's Test Kitchen*,
680 F.Supp.3d 31 (D. Mass. 2023) ....12

*Ambrose v. Bos. Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) ....14

*Briskin v. Shopify*,
135 F.4th 739 (9th Cir. 2025) ....9

*Cossaboon v. Maine Med. Ctr.*,
600 F.3d 25 (1st Cir. 2010) ....1

*Czarnionka v. Epoch Times Ass'n, Inc*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ....14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....14

*Frawley v. Nexstar Media Group, Inc.*,
2023 WL 6065768 (D. Mass. Sept. 18, 2023) ....4, 8

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ....11

*Golden v. NBCUniversal*,
688 F.Supp.3d 150 (S.D.N.Y. 2023) ....11, 12

*Healey v. Hydraforce, Inc.*,
2005 WL 1009514 (Mass. Super. Ct. Mar. 18, 2005) ....5

*Henry v. Major League Baseball Advanced Media, L.P.*,
2025 WL 3717068 (S.D.N.Y. Dec. 23, 2025) ....11

*Hussain v. Rhode Island Hosp.*,
2019 WL 3546888 (D. Mass. June 12, 2019) ....6

*Kahoot! AS v. CPDLive Pty Ltd.*,
2025 WL 2785102 (D. Mass. Sept. 30, 2025) ....2

*Keds Corp. v. Renee Int'l Trading Corp.*,
888 F.2d 215 (1st Cir. 1989) ....5, 6

*Keeton Hustler Magazine, Inc.*,
465 U.S. 770 (1984)....................................................................................................5

*Kuan Chen v. United States Sports Acad., Inc.*,
956 F.3d 45 (1st Cir. 2020)...........................................................................................7, 8

*Lionetta v. InMarket Media, LLC*,
798 F.Supp.3d 139 (D. Mass. 2025)..............................................................................7, 9

*Lyng v. Northwest Indian Cemetery Prot. Ass'n*,
485 U.S. 439 (1988)....................................................................................................11

*Miller v. Suffolk Cnty. House of Corr.*,
2002 WL 31194866 (D. Mass. Sept. 27, 2002)..................................................................4

*Old Republic National Title Insurance Co. v. Simmons Bank*,
2025 WL 1737155 (D. Mass. June 23, 2025).................................................................7, 8

*Ouellette v. True Penny People, LLC*,
352 F.Supp.3d 144 (D. Mass. 2018)...............................................................................2

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
905 F.3d 1 (1st Cir. 2018)..............................................................................................8

*Power v. Connectweb Techs., Inc.*,
648 F.Supp.3d 302 (D. Mass. 2023)...............................................................................8

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024)....................................................................5, 7

*Solomon v. Flipps Media*,
136 F.4th 41 (2d. Cir. 2025).........................................................................................11

*Stark v. Patreon*,
635 F.Supp.3d 841 (N.D. Cal. 2022).............................................................................13

*In re TelexFree Sec. Litig.*,
626 F.Supp.3d 253 (D. Mass. 2022)...........................................................................2, 3, 4

*Ticketmaster-New York, Inc. v. Alioto*,
26 F.3d 201 (1st Cir. 1994)............................................................................................9

*Willitts v. Life Ins. Co. of N. Am.*,
2021 WL 735784 (D. Mass. Feb. 25, 2021).......................................................................4

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016)......................................................................................12, 13

*In re Zynga Priv. Litig.*,
950 F.3d 1098 (9th Cir. 2014) ....................13

**Statutes**

18 United States Code
§ 2710.................... *passim*

Mass. Gen. Laws ch. 223A
§ 3....................2, 5, 6
§ 3(a) ....................2, 3, 4
§ 3(b)....................3, 4
§ 3(d)....................5, 6

**Rules and Regulations**

Federal Rules of Civil Procedure
Rule 12(b)(2)....................1
Rule 12(b)(6)....................1

**Other Authorities**

134 Cong. Rec. S5397-01 ....................11

S. Rep. No. 100-59....................11

## INTRODUCTION

Plaintiff's Opposition (ECF 24, "Opp.") to Defendant Becker's motion to dismiss the First Amended Complaint ("FAC") only confirms that this case does not belong in any court at all, let alone Massachusetts. Plaintiff attempts to piece together Defendant's generalized, nationwide marketing and partnerships and its relatively low revenue figures from Massachusetts users to the alleged violation of the Video Privacy Protection Act ("VPPA"). Not only is this attempt futile, but Plaintiff misinterprets the governing standards and caselaw for finding personal jurisdiction in an age in which the "omnipresence of [the] internet" practically '"eviscerates' the limits on personal jurisdiction over out-of-state defendants." *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35 (1st Cir. 2010). The Court should therefore grant Defendant's Rule 12(b)(2) motion to dismiss this case for lack of personal jurisdiction over Becker.

In addition to these jurisdictional defects, the VPPA claim also fails under Rule 12(b)(6). The VPPA only covers disclosures that identify a specific person who requested or obtained specific video materials—not generalized analytics or category-level navigation. In the FAC, Plaintiff relies on subject-matter descriptors and generic player events, but these are insufficient under the statute. Plaintiff also does not plausibly allege disclosure of information that identifies him. His reliance on hashed numbers, browser identifiers, and Google concepts like Signals or AUID is merely speculation about the data third parties hold. But what is missing are allegations that Becker disclosed information that would foreseeably identify Plaintiff as the viewer of a specific video. Because the pleading does not allege disclosure identifying Plaintiff together with specific video materials, it fails to state a claim.

# ARGUMENT

## I. Plaintiff Has Not Established Specific Jurisdiction Over Becker.

### A. The Long-Arm statute does not confer personal jurisdiction over Becker.

Plaintiff's FAC and Opposition do not—and cannot—establish that Massachusetts has personal jurisdiction over Becker pursuant to Mass. Gen. Laws Ch. 223A, § 3 (the "Long-Arm Statute"). Most fundamentally, Plaintiff has not and cannot establish that his VPPA claim *arises from* Becker's alleged Massachusetts-based activities, as required under any of the three sections of the Long Arm Statute Plaintiff invokes.

1. <u>Plaintiff's claim does not "arise from" Becker's transaction of business in Massachusetts under § 3(a)</u>.

Plaintiff cannot show that his VPPA claim would not have occurred but for a Massachusetts transaction by Becker. Section 3(a) jurisdiction requires a Massachusetts transaction that begins the train of events leading to the injury and reflects an attempt to participate in the Commonwealth, *not* merely a user's presence in Massachusetts or a uniformly available website. Plaintiff has identified no Massachusetts-specific business transaction, purchase, negotiation or delivery that caused the alleged pixel disclosure; his theory rests on uniform code and settings that operate the same everywhere, independent of forum-specific transactions.

Plaintiff's cited cases do not help him. *Kahoot!*, *TelexFree*, and *Ouellette* each involved a concrete, Massachusetts-directed act that was the first step towards the alleged harm. For example, in *Kahoot! AS v. CPDLive Pty Ltd.*, 2025 WL 2785102, at *5 (D. Mass. Sept. 30, 2025), the operative facts giving rise to the alleged infringement of the plaintiff's trademark came from concrete Massachusetts brand-building and business contacts, which were deemed instrumental to the trademark rights at issue. Those Massachusetts-directed activities were the

"but for" first steps that generated the asserted trademark rights. *Id.* In *In re TelexFree Sec. Litig.*, 626 F.Supp.3d 253 (D. Mass. 2022), the defendant entered into a consulting agreement with a Massachusetts-based company that specified the client's Massachusetts location to provide advice "for use in Massachusetts," thereby demonstrating an attempt by defendant to participate in the Commonwealth's economic life. Similarly, in *Ouellette v. True Penny People, LLC*, 352 F.Supp.3d 144, 151–52 (D. Mass. 2018), the court noted that the defendant's negotiations and consummation of an employment contract with the plaintiff in Massachusetts were "the first steps in the train of events resulting to his alleged harms."

Plaintiff points to Becker's partnerships—which are national in nature, and incidentally happen to include relationships with entities in Massachusetts—but he cannot show that they were the first steps "in the train of events" resulting in Plaintiff's alleged harms under the VPPA. Nor can he show that but-for Becker's involvement with those institutions, Plaintiff would not have had his video-watching data tracked and disclosed. Even accepting Plaintiff's allegations that Becker's partnerships with MA-based institutions involved "billing" them (*see* Opp. at 9), Plaintiff does not plead nor state in his Opposition that he signed up for Becker's courses, or that he otherwise obtained access to videos, through any such arrangement. *See generally*, FAC. Plaintiff's "transacting business" narrative therefore does not supply the necessary causal nexus, and there is no basis for jurisdiction under § 3(a).

2. Plaintiff's claim does not "arise from" Becker's contracting to supply services or things in Massachusetts.

Plaintiff also cannot satisfy § 3(b) because the VPPA claim does not "arise from" any Becker contract to supply services in Massachusetts. As an initial matter, nowhere in his FAC

does Plaintiff characterize *any* agreement as a "contract." *See generally*, FAC.[1] Even if the Court were to assume *arguendo* that § 3(b) applies here, the FAC identifies no Massachusetts-specific agreement, negotiation, enrollment, or promise to deliver services into the Commonwealth that began the chain of events for the alleged disclosure; rather, it relies on a uniform, nationwide online platform and pixels configured the same everywhere. And merely listing general prices (Opp. at 5 (citing FAC ¶ 11 n.7)) does not transform a nationwide online offering into a Massachusetts-specific contract for § 3(b) purposes.

Like § 3(a), courts applying § 3(b) require a concrete Massachusetts-directed contractual undertaking that is the first step in the train of events causing the injury, which is missing here. *See TelexFree*, 626 F.Supp.3d at 281 (finding § 3(b) satisfied where defendant entered Massachusetts-directed agreement). By contrast, generalized website access or subscriptions processed outside Massachusetts, without Massachusetts-specific delivery terms or targeting, do not establish an "arising from" nexus. *See Frawley v. Nexstar Media Group, Inc.*, 2023 WL 6065768 (D. Mass. Sept. 18, 2023).

Plaintiff's reliance on *TelexFree* in his Opposition actually highlights that the FAC falls short of pleading the "but-for causation" required to satisfy § 3(b). There, the court confronted a specific factual agreement under which the out-of-state defendant was retained to provide advice to a Massachusetts-based entity, for use in Massachusetts. *TelexFree*, 626 F.Supp.3d at 281. Not only did the agreement specify that TelexFree was based in Massachusetts, but the party

[1] In fact, Plaintiff does not use the term "contract" at all. *Id.* Plaintiff should not now be allowed to amend his pleading via his Opposition. *See, e.g.*, *Willitts v. Life Ins. Co. of N. Am.*, 2021 WL 735784, at *4 (D. Mass. Feb. 25, 2021) ("[A]n opposition to a motion to dismiss is not the place for new factual allegations."); *Miller v. Suffolk Cnty. House of Corr.*, 2002 WL 31194866, at *2 n.1 (D. Mass. Sept. 27, 2002) (declining to consider new allegation presented in opposition to motion to dismiss and collecting cases).

challenging jurisdiction "in effect delivered [its] advice to Massachusetts, for use in Massachusetts." *Id.* The "arising from" prong was met because the in-forum consulting engagement was a but-for cause of the alleged harms. *Id.*

Here, the VPPA injury alleged is the statute-based privacy harm flowing from a purported unlawful disclosure of personally identifiable information, not from the violation of an obligation Becker made in any (unpled) agreement with Plaintiff. Jurisdiction over Becker is therefore not proper under this prong of the Long-Arm Statute.

3. <u>Becker did not cause Plaintiff's alleged injury while regularly soliciting business in Massachusetts</u>.

Plaintiff's theory under § 3(d) fails because the FAC does not plausibly allege a claim "arising from" an injury in Massachusetts caused by Becker while Becker "regularly does or solicits business" or "derives substantial revenue" from Massachusetts. The alleged VPPA disclosure flows from uniform, nationwide code and settings, not Massachusetts-specific conduct, and in contrast to Plaintiff's cited authorities, Plaintiff's revenue assertions are forum-agnostic and minimal.

To start, Plaintiff does not adequately plead that the revenue he highlights is connected to the forum *and* the specific act giving rise to the claim. Neither *Rancourt v. Meredith Corp.*, 2024 WL 381344 (D. Mass. Feb. 1, 2024) nor *Healey v. Hydraforce, Inc.*, 2005 WL 1009514, at *1 (Mass. Super. Ct. Mar. 18, 2005) permits jurisdiction under these circumstances when the revenue cited does not derive from Becker specifically targeting Massachusetts (as opposed to all states). And Plaintiff's reliance on *Keeton Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) and *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215 (1st Cir. 1989) is unavailing because those cases addressed *deliberate* distribution into the forum causing the alleged harm. In *Keds*, for example, the defendant solicited a *Massachusetts* distributor, shipped goods *to*

Massachusetts, and derived sales revenue from Massachusetts—facts tightly linking the in-forum market to the trademark injury. *Id.* Fundamentally, there must be a nexus between the forum and the claim alleged, and Plaintiff cannot demonstrate such a nexus under § 3(d).

Nor has Plaintiff even adequately alleged that his injury even occurred in Massachusetts. *See generally*, FAC; *Hussain v. Rhode Island Hosp.*, 2019 WL 3546888, at *4 (D. Mass. June 12, 2019) (plaintiff fails to establish a prima facie case that his allegedly improper medical care—the injury upon which he bases his medical malpractice claim—occurred in Massachusetts).

**B. Plaintiff has not established that personal jurisdiction over Becker comports with Due Process.**

Even if Plaintiff could demonstrate that jurisdiction is authorized under the Long-Arm Statute, which he cannot, haling Becker into court here would offend Due Process. Becker has not purposefully availed itself of jurisdiction in Massachusetts, and Plaintiff cannot satisfy the "relatedness" and "reasonableness" requirements.

1. <u>Plaintiff has not established purposeful availment by Becker</u>.

Plaintiff cannot demonstrate that Becker deliberately targeted Massachusetts as opposed to any other state in the U.S. Becker's website is globally accessible and not tailored to Massachusetts; the "Massachusetts" and CPE pages Plaintiff highlights are generic, parallel state pages with no Massachusetts-specific video implementation driving the alleged transmissions. Becker does not geofence or run Massachusetts-specific ad campaigns tied to the VPPA theory, and its Massachusetts revenue is a small slice of nationwide operations—none of which plausibly shows targeting or the knowing receipt of substantial, claim-tethered Massachusetts revenue. *See* Memo. in Support of Mot. to Dismiss, ECF No. 21 (MTD) at 8, 11–12 (uniform state pages; no Massachusetts-specific video content or deployment; nationally consistent offerings).

*Lionetta v. InMarket Media, LLC*, cited heavily by Plaintiff, is materially distinguishable. There, this Court found purposeful availment where the defendant allegedly embedded its SDK in third-party apps, obtained Massachusetts consumers' geolocation, and used and sold that Massachusetts data to enable location-based push notifications and targeted ads—conduct reflecting deliberate targeting and monetization of Massachusetts device data. 798 F.Supp.3d 139, 148–50 (D. Mass. 2025) (Kobick, J.) The Court also noted a registered service agent and employees in Massachusetts as support. *Id.* at 149. None of that is alleged here: no SDK placement on Massachusetts devices, no geofenced push notifications or Massachusetts-focused ad placement, no sale or monetization of Massachusetts users' geolocation, and no Massachusetts-specific code deployment. On these pleadings, *Lionetta*'s requirement of a platform's "deliberate use to target" Massachusetts consumers is absent. *Id.* at 149–50; *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 60–61 (1st Cir. 2020); MTD at 8, 11–12 (uniform implementation; no forum-specific configuration).

Plaintiff's reliance on *Rancourt* is also unavailing. The court in *Rancourt* emphasized the nearly 55,000 Massachusetts users, quantified Massachusetts ad revenue, and (critically) the use of collected data to tailor ads/content to Massachusetts users to increase engagement—facts demonstrating a knowing, claim-tethered monetization of the forum. Here, however, Plaintiff alleges no comparable Massachusetts scale, quantified revenue tied to the asserted conduct, or forum-specific tailoring. 2024 WL 381344, at *7–10.

Indeed, the percentages and user counts Plaintiff cites reflect one small sliver of a national footprint Becker has, and are not at all reflective of the type of purposeful engagement with Massachusetts necessary to confer jurisdiction. *See Old Republic National Title Insurance Co. v. Simmons Bank*, 2025 WL 1737155, at *4 (D. Mass. June 23, 2025) ("Courts routinely

reject jurisdiction where a defendant's contacts are passive or incidental."). In contrast, *Plixer Int'l, Inc. v. Scrutinizer GmbH*, which Plaintiff cites, involved an international defendant that knowingly obtained revenue from specific contracts it entered with Massachusetts customers. 905 F.3d 1 (1st Cir. 2018). And *Power v. Connectweb Techs., Inc.*, involved the targeted sale of Massachusetts-specific goods—notary stamps and seals—to Massachusetts customers. 648 F.Supp.3d 302, 318 (D. Mass. 2023). Here, Becker, with its nationally facing website offering generalized online courses that students can access from anywhere, cannot be said to have the type of *purposeful* engagement in direct sales of Massachusetts *goods* to Massachusetts residents.

Becker's behavior is much more akin to that of the defendant in *Kuan Chen*, where the court noted "we cannot say that [defendant] purposefully availed itself of the privilege of conducting business in Massachusetts simply by virtue of maintaining an interactive online learning platform accessible in Massachusetts and all other states", and that the Massachusetts connection could only "be seen as rooted in [Plaintiff's] own unilateral activities." 956 F.3d at 61, 62.

2. Plaintiff has not established that relatedness and reasonableness are satisfied.

Even if Plaintiff could establish that Becker "purposefully availed" itself of the privilege of doing business in Massachusetts, Plaintiff has not satisfied the relatedness and reasonableness requirements of Due Process.

The VPPA claim here arises, if at all, from uniform tracking code/settings that operate identically nationwide; Plaintiff alleges no Massachusetts-specific implementation, configuration, or use that caused the purported disclosure, the same defect that defeated jurisdiction in *Frawley.* 2023 WL 60657. The absence of Massachusetts-directed conduct also aligns with Becker's record showing nationally consistent offerings and no MA-specific

deployment tied to the alleged transmissions. None of the cases Plaintiff cites alter the outcome. In *Lionetta*, the defendant's alleged SDK-driven geolocation capture and Massachusetts-targeted push notifications and ads supplied the nexus, but those forum-specific mechanisms are not alleged in this case. 798 F.Supp.3d 139. *Briskin v. Shopify* likewise does not establish relatedness here, as the Ninth Circuit found the claim "arose out of" the defendant's contact with plaintiff's device, "which Shopify allegedly *knew* was in California." 135 F.4th 739, 760 (9th Cir. 2025) (emphasis added). Plaintiff alleges no Massachusetts-specific device contact, geofenced implementation, or similar in-state conduct tying the alleged VPPA disclosure to Massachusetts.

Finally, Plaintiff's argument regarding reasonableness rests on the view that Massachusetts has a strong interest in protecting residents and that modern travel reduces burden on Becker, but this is a red herring. Indeed, where purposeful availment and relatedness are weak, the potential "reasonableness" of haling a defendant into a forum does not save plaintiff's personal jurisdiction argument. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994). Becker is not based in Massachusetts, and it has no claim-related employees or facilities in Massachusetts tied to the alleged disclosure. Massachusetts's interest in a federal VPPA dispute is tempered where the challenged conduct is not forum-directed, and Plaintiff's residence cannot cure failures on purposeful availment and relatedness. On this record, exercising jurisdiction would not comport with fair play and substantial justice. Becker's motion to dismiss for lack of personal jurisdiction should be granted.

## II. Plaintiff Has Failed to State a Claim Under the VPPA.

The VPPA imposes liability for disclosing information that identifies a person as having requested or obtained "specific video materials or services." This case does not implicate the VPPA's targeted prohibition because the FAC never alleges that Becker disclosed information

that would allow a recipient to identify a particular person and the specific videos that person obtained, and this failure provides an independent basis for dismissal.

**A. Plaintiff has not alleged Becker disclosed specific video material.**

That text of the VPPA requires a concrete linkage between a person and particular videos—not merely a general topic, category, course area, or a general webpage address. Plaintiff does not allege that any disclosures to Meta or Google would foreseeably reveal the *specific videos* that he requested or obtained.

1. <u>Disclosing the subject matter of a video is not sufficient</u>.

Plaintiff's argument that the disclosure of "subject matter" of a video watched is enough to trigger the VPPA flips the statute on its head and ignores its structure. (Opp. at 13–14.) Congress knew how to refer to "title, description, or subject matter" and did so in a separate exception addressing names-and-addresses disclosures; yet in the operative definition of PII, Congress prohibited *only* the identification of "specific video materials." 18 U.S.C. § 2710(a)(3).[2] The distinction matters. Topical labels, section headers, or course-area descriptors—without the particular video title or URL—do not identify specific videos. Allowing mere disclosure of "subject matter" to trigger VPPA liability would also make little practical sense and would contravene the statute's purpose. Congress passed the VPPA in response to the publication of Judge Bork's actual video-rental records—*i.e.*, the specific titles he rented—not a generic disclosure that he rented "dramas" or "documentaries." *See* Senate Report 100-59 (describing list of movies Bork rented, the publication of which spurred the VPPA). The core privacy harm the statute targets is the revelation of what particular videos a person requested or

---

[2] The statute defines PII as information that identifies a person *and* the videos he or she obtained or requested, and that is how it used herein. Plaintiff appears to use it in the context of only identifying the person in Section IIB of the Argument section of the Opposition.

obtained. Expanding liability to subject-level descriptors would sweep in commonplace analytics and category navigation data, and distort a statute that was narrowly tailored to expressly prevent the exposure of concrete viewing choices. *Id.* ("[C]ompanies may sell mailing lists that do not disclose the *actual selections* of their customers."); 134 Cong. Rec. S5397-01 (emphasis added), 1988 WL 170802 ("Video stores will be allowed to sell customer lists, but they cannot disclose the *particular films* their customers have rented.") (emphasis added). Considering its text and structure, the VPPA protects against disclosures linking a person to identifiable, specific videos, not high-level subject classifications divorced from any particular title. To find otherwise would render the VPPA unconstitutionally vague. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Court should avoid interpreting the VPPA in a way that would unnecessarily cast a constitutional question over the statute. *Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445-446 (1988).

Plaintiff's sole reliance on *Golden v. NBCUniversal*, 688 F.Supp.3d 150 (S.D.N.Y. 2023) is misplaced, as *Golden*'s discussion of PII was dicta. More importantly, *Golden's* reasoning predates the Second Circuit's controlling "ordinary person" PII standard in *Solomon v. Flipps Media*, 136 F.4th 41 (2d. Cir. 2025)—a case that Plaintiff studiously avoids. *Solomon* held that the VPPA looks to what an ordinary person could glean from the disclosure, and that the title of a video buried in code is insufficient to meet this standard. (*See* MTD at 19, n.2.)[3]

[3] Even more recent cases since the filing of Defendant's Motion to Dismiss reaffirm *Solomon*. *E.g.*, *Henry v. Major League Baseball Advanced Media, L.P.*, 2025 WL 3717068, at *5 (S.D.N.Y. Dec. 23, 2025) ("In *Solomon's* wake, courts in this district have 'uniformly' dismissed VPPA claims premised on a defendant's use of Meta's pixel."), report and recommendation adopted, 2026 WL 45345 (S.D.N.Y. Jan. 7, 2026) (quoting *Simon v. Scripps Networks, LLC*, 2025 WL 3167915, at *7 (S.D.N.Y. Nov. 13, 2025)).

A prohibition on mere subject matter disclosure does not align with *Yershov's* "reasonably and foreseeably likely" standard either. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016). In *Yershov*, foreseeability turned on whether the combination of data would predictably let the recipient pair a particular person to particular videos—not whether a sophisticated actor could infer broad topics of videos. *Id.* at 484. Simply navigating to a site containing course offerings, without more, does not trigger liability under either standard.

2. <u>Plaintiff has not alleged specific videos were disclosed</u>.

The FAC's assertions that "video title" and "URL" were transmitted are conclusory. Plaintiff cites generic page paths and field names, without factual detail showing that actual data transmitted conveyed a particular video's title. In *Yershov*, the claim was viable because the actual titles of the specific videos viewed were transmitted. Here, by contrast, Plaintiff does not plead facts showing that the purported "video title" field actually contained a title associated with a specific playback, or that any title-bearing URL was transmitted. Allegations that reference a field name like "dt," for example, without pleading what the field actually contained or how it mapped to a specific video (FAC ¶¶ 31, 32), do not plausibly allege disclosure of "specific video materials requested or obtained."

The URL Plaintiff claims is enough to qualify to disclose specific video materials does not actually include the alleged video title. For example, in the alleged Meta disclosure, the URLs shown in the FAC are "/courses/CPEC-43249/detail" (overview) and "/media/85499641/watch" (player), neither of which contains the title of the video. *See* FAC ¶¶ 31–32. This is clearly distinguishable from the cases on which Plaintiff relies. *C.f. Adams v. America's Test Kitchen*, 680 F.Supp.3d 31, 42 (D. Mass. 2023) ("[I]n the example provided in the complaint, the title of the video appears in the URL."); *Golden*, 668 F.Supp.3d at 159 (video

content name and Facebook ID allegedly disclosed, *see infra* p. 11). The other cited cases also do not help Plaintiff on this point. *See, e.g.*, *In re Zynga Priv. Litig.*, 950 F.3d 1098 (9th Cir. 2014) (a Wiretap Act and Stored Communications Act case that does not discuss URL transmissions in the context of "specific video materials"); *Stark v. Patreon*, 635 F.Supp.3d 841 (N.D. Cal. 2022) (dismissing VPPA claim, and discussing the identifiability of Facebook IDs, which are not alleged to have been disclosed in this case).

Plaintiff's reliance on generalized page paths or player events—without pleading the actual title value disclosed—does not satisfy the statute's content-specificity focus. Even crediting the FAC's use of the label "video title," the pleading does not identify any transmission in which the title string or a title-bearing URL actually appeared and would be foreseeably likely identified as a title by Google or Meta.

**B. Plaintiff has not alleged Becker disclosed information identifying him.**

Plaintiff's Opposition also does not salvage his failure to plead that Becker disclosed information that would *identify him* as having requested or obtained specific videos. Plaintiff's allegations rely on generalized assertions about third-party capabilities, not well-pleaded facts.

First, Plaintiff's hashed-phone-number theory fails. Plaintiff argues that hashing is not sufficient to anonymize data (Opp. at 17) and cites generic statements that Meta compares hashed inputs against its own data, but that does not cure the lack of concrete allegations in the Amended Complaint that: (i) Plaintiff's hashed phone number matched a Meta record associated with him; and (ii) any such match occurred contemporaneously with the transmission of a specific video title or URL. Speculation that a sophisticated recipient might, with unspecified "other data," achieve reidentification is not the *Yershov* standard. 820 F.3d 482. *Yershov* requires reasonable foreseeability from the disclosed data itself in the context of the transmission, not post hoc conjecture about what a third party could do with extrinsic datasets.

Second, Plaintiff's browser-ID and "matched to Meta accounts" allegations are similarly conclusory. Plaintiff asserts that a browser ID is "ultimately" matched to Meta accounts (FAC ¶ 34), but offers no facts about how, when, or whether any such match occurred for Plaintiff—or that any match linked Plaintiff to a specific video request.

Further, regarding alleged Meta disclosures, Plaintiff conflates Facebook account identifiers such as a Facebook ID or a c_user cookie with the fbp browser cookie, a browser identifier. The FAC does not allege that Becker disclosed any Facebook user ID, account ID, or c_user cookie; it alleges only browser-level identifiers (like fbp) that at most label a device or session. (*E.g.*, FAC ¶ 34). Allegations that leave open whether any match between an individual and the browser occurred, or whether any match would merely identify a browser or device rather than a particular person, do not satisfy the statute. Plaintiff calls *Ambrose v. Bos. Globe Media Partners LLC*, "analogous" (Opp. at 18), but there the disclosure included "Facebook ID, email address, first name, last name, mailing address." 2022 WL 4329373 (D. Mass. Sept. 19, 2022). Plaintiff also cites *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) for the idea that a "Facebook link or an email address" may be identifying, but neither is pled here, and in any event, the court dismissed the claim, emphasizing the VPPA "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Id.* at 985.[4]

Third, the Google-related theories (Google Signals, AUID, and cookies) likewise do not cross the plausibility threshold. Plaintiff does not allege that Google Signals identified Plaintiff by name, email, or phone based on Becker's disclosures, or that any such association was made

[4] Plaintiff also unhelpfully cites *Czarnionka v. Epoch Times Ass'n, Inc*, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022), involving alleged Facebook ID disclosures, pre-*Solomon.*

together with a specific video title or URL. Nor does Plaintiff plausibly allege that the AUID or cookies he lists—individually or in combination—would reasonably and foreseeably identify him as having requested a specific video. (*E.g.*, FAC ¶ 23.) Alleging that Google can associate data internally is not a substitute for factual allegations that Becker's transmissions would predictably allow Google to identify Plaintiff as a particular viewer of particular videos.

Plaintiff's reliance on subject-matter labels, non-title URLs, and speculative matching by third parties confirms that the claimed disclosures are too indeterminate and too dependent on yet-to-be-done detective work to qualify as PII under the VPPA.

## **CONCLUSION**

Plaintiff's First Amended Complaint should be dismissed in full, without leave to amend.

Dated: January 14, 2026

Respectfully submitted,

BECKER PROFESSIONAL
DEVELOPMENT CORPORATION

By its attorneys,

/s/ *Tony K. Lu*
Tony K. Lu (BBO# 678791)
DENTONS US LLP
101 Federal Street
Suite 1900
Boston, Massachusetts 02110
Tel: (617) 235-6817
tony.lu@dentons.com

Kristen C. Rodriguez (*admitted pro hac vice*)
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
kristen.rodriguez@dentons.com

Lyndsey M. Wajert (*admitted pro hac vice*)
DENTONS US LLP

233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
lyndsey.wajert@dentons.com

**CERTIFICATE OF SERVICE**

I certify that on January 14, 2026, I caused to be filed electronically a true copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will notify the parties of record via electronic notification.

/s/ *Tony K. Lu*