**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MICHAEL GARCIA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BECKER PROFESSIONAL DEVELOPMENT CORPORATION,

Defendant.

Case No. 1:25-cv-12157-JEK

**DEFENDANT BECKER PROFESSIONAL DEVELOPMENT CORPORATION'S ANSWER TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Dated: August 5, 2026

Tony K. Lu (BBO# 678791)
DENTONS US LLP
101 Federal Street
Suite 1900
Boston, Massachusetts 02110
Tel: (617) 235-6817
tony.lu@dentons.com

Kristen C. Rodriguez (*admitted pro hac vice*)
Rebecca Hughes Parker (*admitted pro hac vice)*
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
kristen.rodriguez@dentons.com
rebeccahughes.parker@dentons.com

Lyndsey M. Wajert (*admitted pro hac vice*)
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
lyndsey.wajert@dentons.com

Except as specifically admitted, Defendant Becker Professional Development Corporation ("Becker"), through its undersigned counsel, denies each and every allegation contained in the First Amended Class Action Complaint of Plaintiff Michael Garcia ("Plaintiff") dated October 22, 2025 (ECF No. 15) (the "FAC"), and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos, or speculation contained in any averment or allegation or in the Complaint as a whole. Becker further denies any allegations contained in the Table of Contents, headings, headers, footnotes, graphics, images, or unnumbered paragraphs in the Complaint. Becker reserves the right to supplement and/or amend this Answer, and further reserves any and all affirmative defenses available to it. Becker further states as follows in response to the Complaint's corresponding numbered allegations:

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Becker Professional Development Corp. ("Becker" or "Defendant"), for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

**ANSWER:** Paragraph 1 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant admits only that this action is styled as a purported class action and that Plaintiff purports to allege a violation under the Video Privacy Protection Act ("VPPA"). Defendant denies that Defendant violated the VPPA or any other law, and otherwise denies all remaining allegations in this Paragraph.

2. The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8.

"The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

**ANSWER:** Paragraph 2 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 2 appears to quote portions of the legislative history of the VPPA, but Defendant denies any mischaracterization of the legislative history or Congress's purported purposes. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 2 of the Complaint, and on that basis, denies them.

3. The VPPA imposes civil liability on "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710.

**ANSWER:** Paragraph 3 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 3 appears to quote portions of the VPPA, but Defendant denies any mischaracterization of the statute.

4. Defendant operates becker.com (the "Website"), which offers review materials for the Certified Public Accountant (CPA),[1] Certified Management Accountant (CMA),[2] Enrolled Agent (EA),[3] and Certified Internal Auditor (CIA) exams,[4] in addition to Continuing Professional Education (CPE) materials for accounting professionals.[5]

---

[1] *See* BECKER, CPA EXAM REVIEW, https://www.becker.com/cpa-review.
[2] *See* BECKER, CMA EXAM REVIEW, https://www.becker.com/cma-review.
[3] *See* BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review.
[4] *See* BECKER, CIA EXAM REVIEW, https://www.becker.com/cia-exam-review.
[5] *See* BECKER, CPE, https://www.becker.com/cpe.

**ANSWER:** Defendant admits the allegations in Paragraph 4 of the Complaint.

5. There are hundreds, if not thousands, of pre-recorded videos[6] that may be viewed on-demand by individuals completing exam review and CPE learning on the Website.

**ANSWER:** Defendant admits only that pre-recorded videos are available on its Website for individuals completing exam review and CPE learning and that they can be viewed on demand. Defendant otherwise denies the allegations in Paragraph 5.

6. Unbeknownst to Plaintiff and Class Members, however, Defendant knowingly and intentionally disclosed Website users' personally identifiable information—including a record of every video viewed by the user—to unrelated third parties. By doing so, Defendant violated the VPPA.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 6 about what was known to Plaintiff and Class Members, and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 6.

7. Plaintiff brings this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

**ANSWER:** Paragraph 7 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 7.

---

[6] *See*, *e.g.*, BECKER, CPA EXAM REVIEW, https://www.becker.com/cpa-review ("Becker's CPA Exam Review packages include ... 900+ concept videos"); BECKER, CMA EXAM REVIEW, https://www.becker.com/cma-review ("[For] CMA Review ... [y]ou'll get [] access to a comprehensive 2-part review course that includes[] ... lecture videos"); BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review ("EA Review ... [i]nclude[s]: ... [c]oncept videos[;] [t]ax form videos[;] SkillBuilder videos"); BECKER, CIA EXAM REVIEW, https://www.becker.com/cia-exam-review ("CIA Exam Review ... [i]nclude[s]: ... [c]oncept lecture videos delivered by industry leading CIA instructors"); BECKER, CPE, https://www.becker.com/cpe ("Earn CPE credits your way[.] ... Watch on-demand courses for self-paced study anytime and anyplace"); BECKER, HOW TO GET CPE CREDITS (BEFORE DEADLINE DAY), https://www.becker.com/blog/how-to-get-your-cpe-credits-before-end-of-year ("CPE on-demand is a recorded video course you can take anytime and any place, so they're incredibly convenient.").

## FACTUAL BACKGROUND

### I. HISTORY AND OVERVIEW OF THE VPPA

8. The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record. Congress responded by passing the VPPA, with an eye toward the digital future. As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong.

Rep. 100-599, at 5-6 (cleaned up).

**ANSWER:** Paragraph 8 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 8 appears to quote portions of the legislative history surrounding the VPPA, but Defendant denies any mischaracterization of the legislative history. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 8 of the Complaint, and on that basis, denies them.

9. In 2012, Congress amended the VPPA, and in so doing, reiterated the VPPA's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-258, at 2.

**ANSWER:** Paragraph 9 of the Complaint does not state an allegation of fact and

therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 9 appears to quote portions of the legislative history surrounding the VPPA, but Defendant denies any mischaracterization of the legislative history. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 9 of the Complaint, and on that basis, denies them.

10. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

**ANSWER:** Paragraph 10 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 10 appears to quote portions of the VPPA, but Defendant denies any mischaracterization of the statute and denies any remaining allegations in Paragraph 10.

## II. DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER

11. Becker provides its subscribers (many of whom pay considerable sums)[7] with a

---

[7] *See, e.g.*, BECKER, CPA ONLINE COURSES & EXAM REVIEW, https://www.becker.com/cpa-review/courses ("Advantage" for $2,499; "Pro" for $2,659; "Pro+" for $2858; "Premium" for $3,099; "Concierge" for $5,349"); BECKER, CMA REVIEW ONLINE COURSES & PACKAGES, https://www.becker.com/cma-review/courses ("CMA Review Pro" for $1,209; "CMA Review Advantage" for $1,599); BECKER, EA EXAM REVIEW COURSES, https://www.becker.com/ea-review/courses ("EA Review Essentials" for $499; "EA Review Pro" for $799); BECKER, CIA EXAM REVIEW COURSE, https://www.becker.com/cia-exam-review/courses ("CIA Review Essentials" for $899; "CIA Review Premium" for $1,299; "CIA Review Pro" for $1,599); BECKER, BECKER ONLINE CPE

library of hours of pre-recorded videos. These include, *inter alia*, "concept videos"[8]; "lecture videos"[9]; "[t]ax form videos"[10]; "SkillBuilder videos"[11]; and "CPE ... video course[s]."[12]

**ANSWER:** Defendant admits only that it provides its subscribers with a library of pre-recorded videos, including concept videos, lecture videos, tax form videos, SkillBuilder videos, and CPE video courses. Defendant otherwise denies the remaining allegations in Paragraph 11.

12. Website users "need an account to access [their] course materials."[13] To create an account, individuals are required to provide their first and last name, email address, and phone number.[14]

**ANSWER:** Defendant denies the allegations in Paragraph 12.

13. Becker was founded in 1957 and is widely utilized[15] throughout both Massachusetts and the entirety of the United States. According to the website analytics provider Semrush,[16] during the two-year period of June 2023 to May 2025, there were approximately

---

SUBSCRIPTION, https://www.becker.com/cpe/courses ("Essentials" for $329; "Select" for $499; "Prime" for $799; "Prime (2-year)" for $1,429).

[8] *See, e.g.*, BECKER, CPA EXAM REVIEW, https://www.becker.com/cpa-review; BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review.

[9] *See, e.g.*, BECKER, CMA EXAM REVIEW, https://www.becker.com/cma-review; BECKER, CIA EXAM REVIEW, https://www.becker.com/cia-exam-review.

[10] *See, e.g.*, BECKER, EA EXAM REVIEW, https://www.becker.com/ea-review.

[11] *Id*.

[12] *See, e.g.*, BECKER, HOW TO GET CPE CREDITS (BEFORE DEADLINE DAY), https://www.becker.com/blog/how-to-get-your-cpe-credits-before-end-of-year.

[13] BECKER, CREATE A NEW ACCOUNT, https://www.becker.com/user/register.

[14] *Id*.

[15] *See, e.g.*, BECKER, CPA EXAM PREP, CPE CONTINUING EDUCATION & CMA EXAM PREP, https://www.becker.com ("2 million+ candidates have prepared with Becker").

[16] *See, e.g.*, SEMRUSH, ABOUT US, https://www.semrush.com/company.

23,900,000 Website visits and 5,200,000 unique Website visitors in the United States.[17]




**ANSWER:** Defendant denies the allegations in Paragraph 13.

## III. DEFENDANT KNOWINGLY DISCLOSES CONSUMERS' PERSONALLY IDENTIFIABLE INFORMATION AND VIDEO VIEWING INFORMATION TO THIRD PARTIES

### A. Overview

14. Prior to the commencement of this action, Plaintiff's counsel conducted a dynamic analysis of the Website. A "dynamic analysis" records the transmissions that occur from a user's device.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 14 and on that basis, denies them.

15. Plaintiff's counsel tested what information (if any) Defendant discloses when a user watches a pre-recorded video on the Website.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 15 and on that basis, denies them.

16. The analysis revealed that Defendant discloses information sufficient to identify Plaintiff and specific Class Members and the specific videos they watched to at least two third

[17] *See* SEMRUSH, TRAFFIC ANALYSIS, https://www.semrush.com/analytics/traffic/traffic-overview.

parties: Google LLC ("Google") and Meta Platforms, Inc. ("Meta").

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 16 and on that basis, denies them.

17. Specifically, the dynamic analysis found that when a Website user creates an account and watches a pre-recorded video on the Website, Defendant discloses the following information to Google and Meta.

| **SUMMARY OF THIRD-PARTY EXFILTRATION** | | |
|---|---|---|
| **Third Party** | **Video Info** | **Identifiers** |
| **Google** | Video Title, URL, Video Events | AUID, Google Account, Google Cookies |
| **Meta** | Video Title, URL, Video Events | Phone Number (hashed), FBP |

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 17 and on that basis, denies them.

18. These disclosures were effectuated through the third parties' respective trackers: the Meta Pixel,[18] as well as Google Analytics,[19] Google Conversion Linker,[20] Google Signals,[21]

---

[18] *See, e.g.*, META, META PIXEL, https://developers.facebook.com/docs/meta-pixel/; META, WHAT IS THE META PIXEL?, https://www.facebook.com/business/tools/meta-pixel; META, META PIXEL: GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started ("The Meta Pixel is a snippet of JavaScript code that loads a small library of functions you can use to track ... visitor activity on your website.").

[19] *See, e.g.*, GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/ answer/12159447; GOOGLE, START LEARNING ABOUT GOOGLE ANALYTICS, https://developers.google.com/analytics.

[20] *See, e.g.*, GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/7549390.

[21] *See, e.g.*, GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; GOOGLE, [UA] ACTIVATE GOOGLE SIGNALS [LEGACY], https://support.google.com/analytics/answer/7532985; GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]")

and Google's tags/libraries associated therewith.[22]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 18 and on that basis, denies them.

**B. Google**

19. When a Becker user watches a pre-recorded video on the Website, Defendant discloses to Google: (i) Google Signals, which "associates [data] with user[s'] ... Google accounts," for "users who have signed in ... and who have turned on Ads Personalization"[23]; (ii) Google cookies, which allow Google to "'remember' what a user has done on previous pages

---

[22] *See, e.g.*, JUSTIA, HISTORY OF GOOGLE ANALYTICS, https://onward.justia.com/history-of-google-analytics/ (describing Classic Analytics/ga.js, introduced in or around 2007; Universal Analytics/analytics.js, introduced in or around 2012; and the Global Site Tag/Google Tag/gtag.js, introduced in or around 2017); GOOGLE, INTRODUCTION TO GA.JS (LEGACY), https://web.archive.org/web/20240630045510/https://developers.google.com/analytics/devguides /collection/gajs; GOOGLE, ADD ANALYTICS.JS TO YOUR SITE, https://web.archive.org/web/2024 0701002341/https://developers.google.com/analytics/devguides/collection/analyticsjs/; GOOGLE, [GA4] SET UP ANALYTICS FOR A WEBSITE AND/OR APP, https://support.google.com/analytics/ answer/9304153 ("To begin seeing data in your new Google Analytics 4 property, you'll need to do one of the following: Add the tag to a website builder or CMS-hosted website (e.g., HubSpot, Shopify, etc.)[;] [a]dd the Google tag directly to your web pages[;] [a]dd your tag using Google Tag Manager"); GOOGLE, TAGGING FOR GOOGLE ANALYTICS, https://developers.google.com/ analytics/devguides/collection/ga4/tag-options ("The Google tag is a single tag you can add to your website to measure organic and ad performance. ... Google Tag Manager is a web-based tag management system, that lets you create Google tags and install them on your website, without manually adding JavaScript snippets to your site."); GOOGLE, SET UP GOOGLE ANALYTICS EVENTS IN TAG MANAGER, https://support.google.com/tagmanager/answer/13034206 ("To set up an event using Google Tag Manager, you will configure a Google Analytics: GA4 Event tag"); GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/ 7549390 ("Conversion linker tags are used to help tags measure click data so that conversions are measured effectively."); GOOGLE, ENABLE GOOGLE SIGNALS FOR SERVER-SIDE TAG MANAGER, https://developers.google.com/tag-platform/tag-manager/server-side/google-signals-in-sgtm?option=GA4 ("In Google Analytics, activate Google signals for the property you reference in your client-side Google tag."); GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("As long as you use ... gtag.js, you don't need to write additional code to collect the following user dimensions from your mobile app and/or website[:] ... Google signals[.]"). *See also* GOOGLE, ANALYZE EXISTING TAG CONFIGURATIONS, https://developers.google.com/tag-platform/devguides/existing; GOOGLE, RESTRICT TAG DEPLOYMENT, https://developers.google.com/tag-platform/tag-manager/restrict.

[23] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; *see also* GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

[and their] interactions with the [W]ebsite"[24]; (iii) the user's Google Advertiser user ID ("AUID"), which is "a unique identifier for a user" used in connection with advertising[25]; and (iv) the title and URL of the video the user is watching. This is evinced by the following Website transmissions, tracker settings, and cookies table.

| | |
|---|---|
| Request URL | https://analytics.google.com/g/collect?v=2&tid=G-ZYBPGW6PN4&gtm=45je56b1v884958838za200zb8903153668&_p=1749830837759&_dbg=1&gcd=13l3l3l3l1l1&npa=0&dma=0&tag_exp=101509157~103116026~103200004~103233427~103351869~103351871~104617979~104617981~104661466~104661468~104718208~104736445~104736447&cid=266509115.1749828005&ul=en-us&sr=1920x1080&uaa=x86&uab=64&uafvl=Chromium%3B136.0.7103.93%7CMicrosoft%2520Edge%3B136.0.3240.64%7CNot.A%252FBrand%3B99.0.0.0&uamb=0&uam=&uap=Windows&uapv=19.0.0&uaw=0&are=1&frm=0&pscdl=noapi&_eu=AAACAAQ&_s=2&sid=1749828005&sct=1&seg=1&dl=https%3A%2F%2Fcpelearning.becker.com%2Fcourses%2FCPEC-43249%2Fdetail&dr=https%3A%2F%2Fcpelearning.becker.com%2Fmedia%2F85499641%2Fwatch&dt=CPE&en=page_view&_ee=1&_et=10&tfd=1308 |

| | |
|---|---|
| dl | https://cpelearning.becker.com/media/85499641/watch |
| dr | https://cpelearning.becker.com/courses/CPEC-43249/detail |
| dt | Conflict Resolution \| CPE Learning |
| en | page_view |

| | |
|---|---|
| Request URL | https://www.google.com/ccm/collect?en=page_view&dr=cpelearning.becker.com&dl=https%3A%2F%2Fcpelearning.becker.com%2Fmedia%2F85499641%2Fwatch&scrsrc=www.googletagmanager.com&frm=0&rnd=693182343.1749830776&dt=Conflict%20Resolution%20%7C%20CPE%20Learning&auid=1517161811.1749828005&navt=n&npa=0&gtm=45He56b1v8903153 66za200&gcd=13l3l3l3l1l1&dma=0&tag_exp=101509157~103116026~103200004~103233427~103351869~103351871~104573694~104617979~104617981~104661466~104661468~104718208~104736445~104736447&tft=1749830775947&tfd=834&apve=1&apvf=f |

| | |
|---|---|
| en | page_view |
| dr | cpelearning.becker.com |
| dl | https://cpelearning.becker.com/media/85499641/watch |
| scrsrc | www.googletagmanager.com |
| frm | 0 |
| rnd | 693182343.1749830776 |
| dt | Conflict Resolution \| CPE Learning |
| auid | 1517161811.1749828005 |

[24] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

[25] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/google-ads/answer/9148089?hl=en.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 19 regarding what is evinced by the Website transmissions, tracker settings, and cookies table and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 19.

20. That Defendant discloses to Google, via Google Analytics, Google Conversion Linker, and Google's tags/libraries associated therewith, the video title and the URL of the video the user is watching, is shown by the yellow highlights. Here, the title of the video was "Conflict Resolution | CPE Learning[.]" The URL of the video was https://cpelearning.becker.com/media/85499641/watch[.]

**ANSWER:** Defendant denies the allegations in Paragraph 20.

21. That Defendant discloses to Google, via Google Conversion Linker and Google's tags/libraries associated therewith, the user's Google Advertiser user ID (AUID) is shown by the red highlight. According to Google, an AUID is "a unique identifier for a user" used to help "measure conversions accurately[.]"[26] A digital analytics specialist[27] who worked for tracking technology consultancy company Stape[28] further explains an AUID as a "parameter that stores a unique pseudo-id for a user" and that by "[u]sing the [AUID] ... information, Google can

---

[26] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/ google-ads/answer/9148089?hl=en; *see also id*. ("[W]hen the [] tags fire on the conversion page, it will use the stored ... AUID to properly measure conversions. ... In order to measure conversions accurately, the ... AUIDs captured in first-party cookies on your landing pages have to be available in the browser on your conversion pages as well.").

[27] Giovani Ortolani Barbosa, LINKEDIN, https://www.linkedin.com/in/giovani-ortolani-barbosa/ (last visited Apr. 11, 2025).

[28] *See* STAPE, STAPE IS SERVER-SIDE TRACKING, https://stape.io (Stape provides an "[a]ll-in-one platform designed to simplify server-side tracking. Industry leaders and top companies choose [Stape] to boost data quality and ... configure server-side tracking using the Google Tag Manager[.]").

internally retrieve and match the User-provided data [] that was sent earlier."[29]

```
▼ Processing commands (5)                 js?id=G-ZYBPGW6PN4:463
  ▼ Processing data layer push:           js?id=G-ZYBPGW6PN4:463
    {event: "gtm.init", gtm.uniqueEventId: 2}
      Tag fired: [redacted]
      {function: "__ogt_google_signals", priority: 8,
      vtp_googleSignals: "ENABLED",
      vtp_instanceDestinationId: "G-ZYBPGW6PN4", tag_id:
      118}
      Tag fired: [redacted]
      {function: "__ccd_ga_regscope", priority: 7,
      vtp_settingsTable: ["list", ["map",
      "redactFieldGroup", "DEVICE_AND_GEO",
      "disallowAllRegions", false, "disallowedRegions",
      ""], ["map", "redactFieldGroup", "GOOGLE_SIGNALS",
      "disallowAllRegions", false, "disallowedRegions",
      ""]], vtp_instanceDestinationId: "G-ZYBPGW6PN4",
      tag_id: 117}
```

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 21 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 21.

22. That Defendant enables Google Signals (which "associates [data] with user[s'] ... Google accounts," for "users who have signed in ... and who have turned on Ads Personalization"[30]) to pair Website users' identities and video-viewing information is shown by the green highlights in this screenshot of the Website's tracker settings.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 22 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 22.

23. That Defendant enables Google cookies (which allow Google to "'remember'

---

[29] Giovani Ortolani Barbosa, *One of the Reasons Why Google Ads Conversion Tags on GTM are showing the "Failed" Status*, LINKEDIN (Jan. 23, 2025), https://www.linkedin.com/pulse/one-reasons-why-google-ads-conversion-tags-gtm-failed-giovani-ftghf/ (last accessed June 19, 2025).

[30] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; *see also* GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

what a user has done on previous pages [and their] interactions with the [W]ebsite"[31]) to pair Website users' identities and video-viewing information is shown by the following cookies table. The cookies table reveals that when a user accesses the Becker Website while logged in to a Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the _ga; _ga_<wpid>; NID; _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDCC; _Secure-1PSIDTS; _Secure-3PAPISID; _Secure3PSID; _Secure-3PSIDCC; and _Secure-3PSIDTS cookies:

| Name | Value | Domain |
|---|---|---|
| _ga | [redacted] | .becker.com |
| _ga_ZYBPGW6PN4 | [redacted] | .becker.com |
| _gcl_au | [redacted] | .becker.com |
| __Secure-1PAPISID | [redacted] | .google.com |
| __Secure-1PSID | [redacted] | .google.com |
| __Secure-1PSIDCC | [redacted] | .google.com |
| __Secure-1PSIDTS | [redacted] | .google.com |
| __Secure-3PAPISID | [redacted] | .google.com |
| __Secure-3PSID | [redacted] | .google.com |
| __Secure-3PSIDCC | [redacted] | .google.com |
| __Secure-3PSIDTS | [redacted] | .google.com |
| AEC | [redacted] | .google.com |
| APISID | [redacted] | .google.com |
| HSID | [redacted] | .google.com |
| NID | [redacted] | .google.com |
| SAPISID | [redacted] | .google.com |
| SEARCH_SAMESITE | [redacted] | .google.com |
| SID | [redacted] | .google.com |
| SIDCC | [redacted] | .google.com |
| SSID | [redacted] | .google.com |
| DV | [redacted] | www.google.com |

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 23 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 23.

[31] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

24. The _ga and ga_<wpid> cookies are "used to identifier users[.]"[32] The _ga and ga_<wpid> cookies have a lifespan of 2 years.[33]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 24 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 24.

25. The NID cookie "is used to collect website statistics and track conversion rates and Google ad personalization[.]"[34] The NID cookie has a lifespan of 1 year.[35]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 25 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 25.

26. The _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDC; and _Secure-1PSIDTS cookies are "[t]argeting cookie[s u]sed to create a user profile and display relevant and personalised Google Ads to the user."[36] The _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDC; and _Secure-1PSIDTS cookies have a lifespan of 2 years.[37]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 26 and on that basis, denies them. Defendant otherwise denies the

---

[32] Open Cookie Database, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html. Note, the _ga and ga_<wpid> cookies are first-party cookies, while the other cookies are third-party cookies. A first-party cookie is "created by the website the user is visiting" – i.e., the Website. PC Magazine, First-Party Cookie, https://www.pcmag.com/ encyclopedia/term/first-party-cookie. A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Google. PC Magazine, Third-Party Cookie, https://www.pcmag.com/encyclopedia/term/third-party-cookie.

[33] Open Cookie Database, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[34] *Id*.

[35] *Id*.

[36] *Id*.

[37] *Id*.

allegations in Paragraph 26.

27. The _Secure-3PAPISID cookie "[p]rofiles the interests of website visitors to serve relevant and personalised ads through retargeting."[38] The _Secure-3PAPISID cookie has a lifespan of 2 years.[39]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 27 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 27.

28. The _Secure3PSID cookie is a "[t]argeting cookie[ u]sed to profile the interests of website visitors and display relevant and personalised Google ads."[40] The _Secure3PSID cookie has a lifespan of 2 years.[41]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 28 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 28.

29. The _Secure-3PSIDCC and _Secure-3PSIDTS cookies are "[t]argeting cookie[s u]sed to create a user profile and display relevant and personalised Google Ads to the user."[42] The _Secure-3PSIDCC and _Secure-3PSIDTS cookies have a lifespan of 2 years.[43]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 29 and on that basis, denies them. Defendant otherwise denies the

[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*

allegations in Paragraph 29.

30. Even when a when a user accesses the Website while not logged in to a Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the _ga and _ga_<wpid> cookies:

| Name | Value | Domain |
| --- | --- | --- |
| _ga | [redacted] | .becker.com |
| _ga_ZYBPGW6PN4 | [redacted] | .becker.com |
| _gcl_au | [redacted] | .becker.com |

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 30 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 30.

### C. Meta

31. When a Becker user watches a pre-recorded video on the Website, Defendant discloses to Meta: (i) the user's hashed phone number; (ii) the user's "Facebook browser ID value [] stored in the _fbp browser cookie"[44]; and (iii) the title and URL of the video the user is watching, along with video interactions. This is evinced by the following Website transmissions.

| | |
| --- | --- |
| Request URL | https://www.facebook.com/tr/?id=180160859381814&ev=SubscribedButtonClick&dl=https%3A%2F%2Fcpelearning.becker.com%2F&rl=https%3A%2F%2Fcpelearning.becker.com%2Fsignin&if=false&ts=1750091332931&cd[buttonFeatures]=%7B%22classList%22%3A%22sc-fCOCGI%20jOnTrH%22%2C%22destination%22%3A%22https%3A%2F%2Fcpelearning.becker.com%2Fcourse%2FCPEC-43249%2Fdetail%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22%C2%A0%5CnBEHAVIORAL%20ETHICS%5CnConflict%20Resolution%20%5CnJina%20Etienne%5Cn1.0%5CnPlay%22%2C%22numChildButtons%22%3A2%2C%22tag%22%3A%22a%22%2C%22type%22%3Anull%2C%22name%22%3A%22%22%7D&cd[buttonText]=%C2%A0%0ABEHAVIORAL%20ETHICS%0AConflict%20Resolution%20%0AJina%20Etienne%0A0%0APlay&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Home%20%7C%20CPE%20Learning%22%7D&cd[parameters]=%5B%5D&sw=1280&sh=720&cudff[ph]=*********&ncudff[ph]=*********&udff[ph]=f590f9c3f1a0cbadb239dd5bb6297c661b5efab4d0b0a6fa70bdf09c79e49b35&v=2.9.208&r=stable&a=tmSimo-GTM-WebTemplate&ec=2&o=14366&fbp=fb.1.1750090502098.7479482791388795828&cs_est=true&ler=other&it=1750091324080&coo=false&es=automatic&tm=3&cdl=&exp=k2&rqm=GET |

[44] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/. *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/docs/ marketing-api/conversions-pi/parameters/fbp-and-fbc.

| | |
|---|---|
| id | 180160859381814 |
| ev | SubscribedButtonClick |
| dl | https://cpelearning.becker.com/ |
| rl | https://cpelearning.becker.com/signin |
| if | false |
| ts | 1750091332931 |
| cd[buttonFeatures] | {"classList":"sc-fCOCGl jOnTrH","destination":"https://cpelearning.becker.com/course/CPEC-43249/detail","id":"","imageUrl":"","innerText":" \nBEHAVIORAL ETHICS\nConflict Resolution \nJina Etienne\n1.0\nPlay","numChildButtons":2,"tag":"a","type":null,"name":""} |
| cd[buttonText] | BEHAVIORAL ETHICS<br>Conflict Resolution<br>Jina Etienne<br>0<br>Play |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Home \| CPE Learning"} |
| cd[parameters] | [] |
| sw | 1280 |
| sh | 720 |
| cudff[ph] | ********** |
| ncudff[ph] | ********** |
| udff[ph] | f590f9c3f1a0cbadb239dd5bb6297c661b5efab4d0b0a6fa70bdf09c79e49b35 |
| v | 2.9.208 |
| r | stable |
| a | tmSimo-GTM-WebTemplate |
| ec | 2 |
| o | 14366 |
| fbp | fb.1.1750090502098.747948279138879582 |

| | |
|---|---|
| Request URL | https://www.facebook.com/tr/?id=180160859381814&ev=SubscribedButtonClick&dl=https%3A%2F%2Fcpelearning.becker.com%2Fcourses%2FCPEC-43249%2Fdetail&rl=https%3A%2F%2Fcpelearning.becker.com%2F&if=false&ts=1750091337652&cd[buttonFeatures]=%7B%22classList%22%3A%22sc-dycHyt%20jvAZz%20sc-bWQvJa%20KVVQs%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22Play%20course%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22type%22%3Anull%2C%22name%22%3A%22%22%2C%22value%22%3A%22%22%7D&cd[buttonText]=Play%20course&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Conflict%20Resolution%20%22%7D&cd[parameters]=%5B%5D&sw=1280&sh=720&v=2.9.208&r=stable&a=tmSimo-GTM-WebTemplate&ec=1&o=12318&fbp=fb.1.1750090502098.747948279138879582&cs_est=true&ler=other&it=1750091334318&coo=false&es=automatic&tm=3&cdl=&rqm=GET |

| | |
|---|---|
| id | 180160859381814 |
| ev | SubscribedButtonClick |
| dl | https://cpelearning.becker.com/courses/CPEC-43249/detail |
| rl | https://cpelearning.becker.com/ |
| if | false |
| ts | 1750091337652 |
| cd[buttonFeatures] | {"classList":"sc-dycHyt jvAZz sc-bWQvJa KVVQs","destination":"","id":"","imageUrl":"","innerText":"Play course","numChildButtons":0,"tag":"button","type":null,"name":"","value":""} |
| cd[buttonText] | Play course |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Conflict Resolution "} |
| cd[parameters] | [] |
| sw | 1280 |
| sh | 720 |
| v | 2.9.208 |
| r | stable |
| a | tmSimo-GTM-WebTemplate |
| ec | 1 |
| o | 12318 |
| fbp | fb.1.1750090502098.747948279138879582 |

| | |
|---|---|
| Request URL | https://www.facebook.com/tr/?id=180160859381814&ev=SubscribedButtonClick&dl=https%3A%2F%2Fcpelearning.becker.com%2Fcourses%2FCPEC-43249%2Fdetail&rl=https%3A%2F%2Fcpelearning.becker.com%2Fmedia%2F85510584%2Fwatch&if=false&ts=1750091433285&cd[buttonFeatures]=%7B%22classList%22%3A%22sc-dycHyt%20fIZLHb%20sc-eTlgpb%20fOwuxp%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22Resume%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22type%22%3Anull%2C%22name%22%3A%22%22%2C%22value%22%3A%22%22%7D&cd[buttonText]=Resume&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Conflict%20Resolution%20%22%7D&cd[parameters]=%5B%5D&sw=1280&sh=720&v=2.9.208&r=stable&a=tmSimo-GTM-WebTemplate&ec=2&o=12318&fbp=fb.1.1750090502098.747948279138879582&cs_est=true&ler=other&it=1750091346289&coo=false&es=automatic&tm=3&cdl=&exp=k2&rqm=GET |

| | |
|---|---|
| id | 180160859381814 |
| ev | SubscribedButtonClick |
| dl | https://cpelearning.becker.com/courses/CPEC-43249/detail |
| rl | https://cpelearning.becker.com/media/85510584/watch |
| if | false |
| ts | 1750091433285 |
| cd[buttonFeatures] | {"classList":"sc-dycHyt fIZLHb sc-eTlgpb fOwuxp","destination":"","id":"","imageUrl":"","innerText":"Resume","numChildButtons":0,"tag":"button","type":null,"name":"","value":""} |
| cd[buttonText] | Resume |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Conflict Resolution "} |
| cd[parameters] | [] |
| sw | 1280 |
| sh | 720 |
| v | 2.9.208 |
| r | stable |
| a | tmSimo-GTM-WebTemplate |
| ec | 2 |
| o | 12318 |
| fbp | fb.1.1750090502098.747948279138879582 |

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 31 regarding what is evinced by the following Website transmissions and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 31.

32. That Defendant discloses to Meta, via the Meta Pixel, the video title and the URL of the video the user is watching, along with video interactions, is shown by the yellow highlights. Here the title of the video was "Conflict Resolution[.]" The URLs of the video were "https://cpelearning.becker.com/courses/CPEC-43 249/detail" (video overview) and "https://cpelearning.becker.com/media/85499641/watch" (video player). The video interactions were titled "Play[,]" "Play course[,]" and "Resume[,]" showing that a user clicked on buttons to play and resume the video.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 32 regarding what is shown by the yellow highlights, and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 32.

33. That Defendant disclosed to Meta the user's "Facebook browser ID value [] stored in the _fbp browser cookie"[45] is shown by the red highlights (here, "fb.1.1750090502098.747948279138879582"). According to Meta, browser ID values are formatted as "fb.${subdomain_index}.${creation_time}.${random_number}."[46]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 33 and on that basis, denies them. Defendant otherwise denies the

---

[45] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/. *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/ docs/marketing-api/conversions-pi/parameters/fbp-and-fbc.

[46] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com/docs/ marketing-api/conversions-api/parameters/customer-information-parameters/.

allegations in Paragraph 33.

34. Per the Meta "Cookies Policy," the "'_fbp' cookie *identifies browsers* for the purposes of providing advertising and site analytics services[.]"[47] Specifically, the browser ID value, along with other "customer information parameters[,]" is ultimately "matched to Meta accounts."[48] Thus, through the Facebook browser ID value, an ordinary person can easily identify a specific user, as well as which specific user watched what video(s).

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 34 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 34.

35. That Defendant discloses to Meta, via the Meta Pixel, the user's hashed phone number is shown by the blue highlight (here, "f590f9c3f1a0cbadb239dd5bb6297c661b5efab4 d0b0a6fa70bdf09c79e49b35").

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 35 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 35.

---

[47] META, COOKIES POLICY, https://www.facebook.com/privacy/policies/cookies (emphasis added).
[48] FACEBOOK, ABOUT EVENT MATCH QUALITY, https://www.facebook.com/business/help/765081237991954.

36. As the government,[49] trade groups,[50] and courts[51] agree, phone numbers constitute personally identifiable information ("PII"). Indeed, an ordinary person can use a phone number to uniquely identify another individual, as there exist multiple services that enable individuals to look up who owns a phone number.[52]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 36, and on that basis, denies them.

37. Although Defendant discloses SHA-256 hashed[53] phone numbers, the reality is

---

[49] *See, e.g.*, DEP'T OF HOMELAND SECURITY, HANDBOOK FOR SAFEGUARDING SENSITIVE PII, https://www.dhs.gov/sites/default/files/2024-03/17_1204_priv_handbooksafeguarding sensitivepii_rev3_047-01-007.pdf, at 5-6 ("'Personally Identifiable Information' or PII, [] is any information that permits the identity of an individual to be directly or indirectly inferred, including any other information that is linked or linkable to that individual[.] ... PII includes your name and your work email, address, and phone"); FEDERAL TRADE COMMISSION, ON THE LEAKAGE OF PERSONALLY IDENTIFIABLE INFORMATION VIA ONLINE SOCIAL NETWORKS, https://www.ftc.gov/sites/default/files/documents/public_comments/privacy-roundtables-comment-project-no.p095416-544506-00010/544506-00010.pdf, at 2 ("A recent report identifies a number of examples that may be considered PII[, ] including: Name (full name, maiden name, mother's maiden name), personal identification number (e.g., Social Security Number), address (street or email address), telephone numbers[.]").

[50] *See, e.g.*, NETWORK ADVERTISING INITIATIVE, NAI CODE OF CONDUCT (2020), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf, at 8 ("Personally-Identified Information (PII) is any data linked, or intended to be linked, to an identified individual, including name, address, telephone number, email address[.]").

[51] *See, e.g., E. Coast Test Prep LLC v. Allnurses.com, Inc.,* 167 F. Supp. 3d 1018, 1023 (D. Minn. 2016) ("[I]t would be absurd to say that a person's phone number or physical address is not typically personally identifying information. An IP address, a physical address, and a phone number are all modern day hallmarks of how a person may be identified."); *Brown v. Maxwell*, 929 F.3d 41, 48 n.22 (2d Cir. 2019) (permitting "redactions to protect personally identifying information such as personal phone numbers"); *Hadley v. Kellogg Sales Co*., 2018 WL 7814785, at *3 (N.D. Cal. Sept. 5, 2018) ("[C]ompelling reasons exist to seal sensitive personal information such as financial information, medical records and conditions, phone numbers, and addresses."); *Snapkeys, Ltd. v. Google LLC*, 2021 WL 1951250, at *3 (N.D. Cal. May 14, 2021) (collecting cases sealing personally identifying information, including phone numbers).

[52] *See*, *e.g.*, https://web.archive.org/web/20250703022426/https://www.whitepages.com/reverse-phone ("Reverse Phone Lookup[:] Find out who called you. ... A reverse phone number lookup is a search that starts with a phone number and reveals details about the caller, such as their full name, phone carrier, location, and [more]"); https://web.archive.org/web/20250701021720/ https://www.intelius.com/reverse-phone-lookup/ ("Reverse Phone Number Lookup, Look up a phone number to find owner information, carrier details, and more! ... You may find a full name, known aliases, and even possible photos of the phone number's potential owner."); https://web.archive.org/web/20250620092901/https://www.truthfinder.com/reverse-phone-lookup/ ("Reverse Phone Lookup[:] Look up almost any type of phone number and reveal the owner[.] ... You simply enter a phone number, and a reverse phone lookup will scan public records for information related to the owner of the phone number and carrier. These details could include the full name of the person the number is registered to, the location history of the phone number, and social media profiles associated with the number.").

[53] *See, e.g.*, CODEACADEMY, WHAT IS HASHING?, https://www.codecademy.com/resources/ blog/what-is-hashing/ ("Hashing is the process of converting data — text, numbers, files, or anything, really — into a fixed-length string of

that, even in hashed form, phone numbers are traceable to individuals.[54] In fact, the Federal Trade Commission has warned companies as recently as July 2024 that hashing is an insufficient method of anonymizing information.[55] Meta, itself, informs advertisers that it can "use[] ... hashed information and compare[] it to our own hashed information to build custom audiences or more accurately determine which people took action in response to your ad."[56] Thus, even in hashed form, phone numbers are traceable to individuals.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 37, and on that basis, denies them.

## IV. DEFENDANT DISCLOSES CLASS MEMBERS' PII AND VIDEO-VIEWING INFORMATION TO GOOGLE AND META FOR THE PURPOSES OF MARKETING, ADVERTISING, AND ANALYTICS

38. Defendant transmits the foregoing PII and video-viewing information to Google and Meta so that Google and Meta can help Defendant launch marketing campaigns, target specific users with advertising, and analyze Website user data.

**ANSWER:** Defendant denies the allegations in Paragraph 38.

---

letters and numbers. Data is converted into these fixed-length strings, or hash values, by using a special algorithm called a hash function.").

[54] *See, e.g.*, FEDERAL TRADE COMMISSION, DOES HASHING MAKE DATA "ANONYMOUS"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique ... the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); STEVEN ENGLEHARDT ET AL., I NEVER SIGNED UP FOR THIS! PRIVACY IMPLICATIONS OF EMAIL TRACKING, https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy protection. This is folk knowledge in the security community, but bears repeating."); MARTECH, FTC PRIVACYCON: YOUR EMAIL ADDRESS IS LEAKING AND VULNERABLE, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] ... Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[55] FEDERAL TRADE COMMISSION, NO, HASHING STILL DOESN'T MAKE YOUR DATA ANONYMOUS (July 24, 2024) ("[H]ashes aren't 'anonymous' and can still be used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized.").

[56] META, ABOUT HASHING CUSTOMER INFORMATION, https://www.facebook.com/business/help/112061095610075?id=2469097953376494 (last accessed June 19, 2025).

### A. Google Analytics

39. According to Google, "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]."[57] Google describes these reports and insights as follows:[58]

> Real-Time Reporting
> - Monitor activity on your site or app as it happens.
>
> Acquisition Reports
> - See how users land on your site or app and understand the effectiveness of your marketing.
>   - User Acquisition[:] Discover how users reach your site or app through different paid and organic sources.
>   - Traffic Acquisition[:] See a session-based view of traffic and engagement on your site or app through different paid and organic traffic sources.
>
> Engagement Reports
> - Better understand what content drives engagement and conversions on your site or app.
>   - Events Report[:] Get a detailed view of user actions, system events, or errors.
>   - Conversion Report[:] See how all your marketing channels are working together to drive conversions.
>   - Pages and Screen Report[:] See which web pages and app screens users engage with the most.
>
> Monetization Reports
> - See how much revenue your site or app generates whether it's from ecommerce, subscriptions, or ads.
>   - Ecommerce[:] Analyze purchase activity including product and transaction information, average purchase revenue, average purchase revenue per user, and other data.
>   - In-App Purchases[:] Improve your app monetization with insights about the highest performing products and subscriptions.
>   - Publisher Ads[:] See ad revenue that your app generates using the Google Analytics for Firebase SDK.

**ANSWER:** Paragraph 39 of the Complaint does not state an allegation of fact and

---

[57] GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/ answer/12159447.
[58] GOOGLE, ANALYTICS FEATURES, https://marketingplatform.google.com/about/ analytics/features/.

therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 39 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 39 of the Complaint, and on that basis, denies them.

40. This gathered information is used for marketing and advertising. Specifically, Google "Analytics is designed to work seamlessly with other Google solutions and partner products" and can "unlock deeper insights into [advertising] campaign performance from Google Ads, Display & Video 360, and Search Ads 360."[59] Google Analytics integrates with Google Ads so that clients, like Defendant, can "[s]ee [] Ads data together with [] website and app performance data in the Google Ads reports in Analytics."[60] Google Analytics integrates with Display & Video 360 and Search Ads so that clients, like Defendant, can "[e]xport conversions created in Analytics[,]" "create audiences that are predicted to take [certain] actions[,]" and "use them for automated bidding" in Display & Video 360 and Search Ads.[61]

**ANSWER:** Paragraph 40 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 40 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 40 of the Complaint, and on that basis, denies them.

---

[59] *Id.*
[60] *Id.*
[61] *Id.*

41. Gathered information is also used for analytics. With Google Analytics, clients, like Defendant, can "apply[] Google's machine learning models, ... analyze [] data[,] and predict future actions people may take, like making a purchase or churning." [62] Additionally, Google Analytics can "automatically detect and surface actionable insights from [gathered] data like important changes, new trends, and other growth opportunities[.]"[63] And Google can provide "[a]nswers to [marketers' q]uestions ... in natural language[,] ... to quickly find [] metric[s], report[s], or insights[.]"[64] Through Google Analytics' "[u]ser [e]xploration" functions, it is even possible to "[s]elect specific groups of users and drill down deeper to understand how those users engage with [a] site or app." [65]

**ANSWER:** Paragraph 41 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 41 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 41 of the Complaint, and on that basis, denies them.

42. Thus, Google Analytics furnishes "a complete understanding of [] customers across devices and platforms[,] ... [and] gives [] the tools[] ... to understand customer journey and improve marketing ROI." [66]

**ANSWER:** Paragraph 42 of the Complaint does not state an allegation of fact and

---

[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] GOOGLE, ANALYTICS OVERVIEW, https://marketingplatform.google.com/about/analytics/.

therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 42 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 42 of the Complaint, and on that basis, denies them.

43. Defendant uses Google Analytics for such marketing, advertising, and analytics purposes.

**ANSWER:** Defendant denies the allegations in Paragraph 43.

**B. Google Conversion Linker**

44. Google's Conversion Linker[67] is used for "conversion tracking," which is the process of "show[ing ] what happens after a customer interacts with [an] ad[] -- whether they purchased a product, signed up for [a] newsletter, called [a] business, or downloaded [an] app."[68] "When a customer completes [such] an action that [a Google client has] defined as valuable, these customer actions are called conversions."[69]

**ANSWER:** Paragraph 44 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 44 appears to quote portions of publicly available documents, but Defendant denies any mischaracterization of the documents. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 44 of the Complaint, and on that basis, denies them.

---

[67] GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/7549390.
[68] GOOGLE, ABOUT CONVERSION TRACKING, https://support.google.com/google-ads/answer/1722022.
[69] *Id*

45. In technical terms, Google explains that "[w]hen people ... click[] a text ad or view[] a video ad, Google [] stores cookies that contain information about the interaction, and a unique identifier for a user or the ad click that brought the user to [a] site. When someone converts on [a] website, the conversion tracking tag ... reads this cookie and sends it back to Google [] with the conversion information."[70]

**ANSWER:** Paragraph 45 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 45 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 45 of the Complaint, and on that basis, denies them.

46. This gathered information is used for marketing and advertising. Google states that "conversions are eligible for bidding and reporting in Google Ads."[71] That is, Google clients who track conversions can "[u]se Smart Bidding strategies (such as Maximize Conversions, target CPA, and target ROAS) that automatically optimize [] campaigns according to [specific] business goals."[72]

**ANSWER:** Paragraph 46 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 46 appears to quote portions of publicly available documents, but Defendant denies

---

[70] GOOGLE, HOW GOOGLE ADS TRACKS WEBSITE CONVERSIONS, https://support.google.com/google-ads/answer/7521212.

[71] GOOGLE, KEY EVENT, CONVERSION & PURCHASE DEFINITION, https://support.google.com/google-ads/answer/6365.

[72] GOOGLE, ABOUT CONVERSION TRACKING, https://support.google.com/google-ads/answer/1722022.

any mischaracterization of the documents. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 46 of the Complaint, and on that basis, denies them.

47. Gathered information is also used for analytics. Google's "conversion tags help to build reports that show [] what happens after a customer clicks on [] ads[.]"[73] For example, advertisers can "[f]ind out how many customers may be interacting with [their] ads on one device or browser and converting on another[, by] ... view[ing] cross-device, cross-browser, and other conversion data ... reporting[.]"[74] Clients can also "[l]earn which keywords, ads, ad groups, and campaigns are best at driving valuable customer activity[, to better u]nderstand [their] return on investment (ROI) and make better informed decisions about [] ad spend."[75]

**ANSWER:** Paragraph 47 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 47 appears to quote portions of publicly available documents, but Defendant denies any mischaracterization of the documents. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 47 of the Complaint, and on that basis, denies them.

48. Defendant uses Google's Conversion Linker for such marketing, advertising, and analytics purposes.

**ANSWER:** Defendant denies the allegations in Paragraph 48.

---

[73] GOOGLE, GOOGLE ADS CONVERSIONS, https://support.google.com/tagmanager/answer/6105160.
[74] GOOGLE, ABOUT CONVERSION TRACKING, https://support.google.com/google-ads/answer/1722022.
[75] *Id.*

### C. Google Signals

49. Through "Google signals[,] ... [Google] Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]"[76] "This association of data with these signed-in users is used to enable cross-device remarketing, and cross-device key events export to Google Ads."[77] Thus, with Google Signals, "Google is able to develop a holistic view of how those users interact with an online property from multiple browsers and multiple devices. For example, [one] can see how users browse products on [a] site from a phone, and later return to complete purchases from a tablet or laptop."[78]

**ANSWER:** Paragraph 49 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 49 appears to quote portions of publicly available documents, but Defendant denies any mischaracterization of the documents. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 49 of the Complaint, and on that basis, denies them.

50. This gathered information is used for marketing and advertising. Namely, "Google signals enables[ r]emarketing[;] ... Google Ads and other Google Marketing Platform advertising products can use third-party advertising identifiers enabled by Google signals to serve ads in ... remarketing campaigns to Google users[.]"[79] Put simply, "[r]emarketing lets [Google's clients] re-engage users based on their behavior in [an] app or on [a] site. When users

---

[76] GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/ 9268042.
[77] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345.
[78] *Id.*
[79] *Id.*

fit the behavioral profile for an audience (for example, Reached Level 9), they are added to that audience and are eligible to see ads related to that earlier behavior." [80]

**ANSWER:** Paragraph 50 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 50 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 50 of the Complaint, and on that basis, denies them.

51. Gathered information is also used for analytics. Google Signals helps "[r]eport on cross-device user counts[,]" "[r]eport and understand different groups of users based on the different device combinations they use[,]" [r]eport on and understand [] cross-device marketing performance (e.g., channels, campaigns, etc.)[,]" and "[u]nderstand the customer journey across devices by analyzing user-based reports (active users, funnels, pathing)[.]" [81] In this sense, "Google signals enables[] ... Google Analytics [to] collect[] additional information about demographics and interests ... from users who are signed in to their Google accounts[.]"[82]

**ANSWER:** Paragraph 51 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 51 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 51 of the Complaint, and on that basis,

---

[80] *Id.*
[81] *Id.*
[82] *Id.*

denies them.

52. Defendant uses Google Signals for such marketing, advertising, and analytics purposes.

**ANSWER:** Defendant denies the allegations in Paragraph 52.

**D. Meta Pixel**

53. According to Meta, "[t]he Meta Pixel is a snippet of JavaScript code that allows [clients] to track visitor activity on [their] website[s]. It works by loading a small library of functions which [] can [be] use[d] whenever a site visitor takes an action (called an event) that [a client] want[s] to track (called a conversion)." [83] The Meta Pixel "relies on Facebook cookies, which enable [Meta] to match [] website visitors to their respective Facebook User accounts." [84] Meta offers a menu of "standard events" that can be tracked, including what content a visitor views or purchases. [85] Advertisers can also create their own tracking parameters by building a "custom event." [86]

**ANSWER:** Paragraph 53 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 53 appears to quote portions of publicly available documents, but Defendant denies any mischaracterization of the documents. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 53 of the Complaint, and on that basis,

---

[83] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[84] META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started.

[85] META, SPECIFICATIONS FOR META PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655. *See also* META, STANDARD EVENTS, https://developers.facebook.com/docs/meta-pixel/reference.

[86] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005; *see also* META, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

denies them.

54. This gathered information is used for marketing and advertising. Specifically, the Meta Pixel's library of functions can be used to "[t]rack conversions [] in the Ads Manager[,] ... to define custom audiences for ad targeting, [and] for Advantage+ catalog ads campaigns[.]"[87]

**ANSWER:** Paragraph 54 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 54 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 54 of the Complaint, and on that basis, denies them.

55. Taking these one by one, "track[ing ] website visitors' actions[,] also known as conversion tracking[,] ... can be used to analyze the effectiveness of [a] conversion funnel and to calculate [] return[s] on ad investment[s]." [88] Once a client is "tracking conversions, [Meta] recommend[s] that [the client] use them to ... optimize [] ads for website conversions." [89]

**ANSWER:** Paragraph 55 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 55 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 55 of the Complaint, and on that basis, denies them.

---

[87] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.
[88] META, CONVERSION TRACKING, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking.
[89] *Id.*

56. A "custom audience is an ad targeting option" [90] that can be used by advertisers, like Defendant, "to find people most likely to respond to [their] ad[s]." [91] Clients can "[c]reate [an] online audience based on the traits of who [they] want to see [their] ad[s], and narrow down [their] ad[s'] audience[s] by interests, gender or location and use ad targeting to find the people most likely to take action. Once [an] ad starts running, [Meta's] system will learn who is engaging with it and, over time, narrow [the] audience [to help] reach more of the right people." [92] Advertisers can target, *inter alia*, "[n]ew customers with specific interests or from a specific location"; "[p]eople who have already shown an interest in [a client's] business"; and "[p]eople who share interests with [a client's] current customers." [93]

**ANSWER:** Paragraph 56 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 56 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 56 of the Complaint, and on that basis, denies them.

57. "Advantage+ catalog ads are dynamically created by populating an ad template with product information found in a data feed. This allows [Meta clients] to create thousands of ads without having to configure each of them individually." [94] Clients "can also use Advantage+

---

[90] META, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/ help/744354708981227.
[91] META, AUDIENCE AD TARGETING, https://www.facebook.com/business/ads/ad-targeting.
[92] *Id*.
[93] *Id*.
[94] META, META PIXEL FOR ADVANTAGE+ CATALOG ADS, https://developers.facebook.com/docs/meta-pixel/get-started/advantage-catalog-ads.

catalog ads to target visitors based on how they have interacted with [their] website in the past."[95]

**ANSWER:** Paragraph 57 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 57 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 57 of the Complaint, and on that basis, denies them.

58. In short, Meta states[96] that the Meta Pixel can be used to:

- Make sure your ads are shown to the right people. Find new customers, or people who have visited a specific page or taken a desired action on your website.
- Drive more sales. Set up automatic bidding to reach people who are more likely to take an action you care about, like making a purchase.
- Measure the results of your ads. Better understand the impact of your ads by measuring what happens when people see them.

**ANSWER:** Paragraph 58 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 58 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 58 of the Complaint, and on that basis, denies them.

59. Gathered information is also used for analytics. Namely, the Meta Pixel helps "understand[] the actions people take on [a] website."[97] "Examples of actions include adding an

---

[95] *Id.*
[96] META, ABOUT META PIXEL, https://www.facebook.com/business/help/ 742478679120153.
[97] *Id.*

item to their shopping cart or making a purchase. The pixel receives these actions, or events, which [] can [be] view[ed] on [the] Meta Pixel page in [the Meta] Events Manager. From there, [a client will] be able to see the actions that [its] customers take."[98] This allows Meta clients to "segment [their] website visitors into groups based on the actions they have taken on [their] website."[99] Additionally, with the Meta Pixel, clients can "[a]dd events on the pages that matter to [their] business to help [] understand [] customers' journey[s]. If [one were to] set up events along their path (for example, from product page views to a purchase) it may help [] measure and optimize [] ads for the conversions that mean the most to [one's] business."[100]

**ANSWER:** Paragraph 59 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 59 appears to quote portions of a publicly available document, but Defendant denies any mischaracterization of the document. Defendant otherwise lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 59 of the Complaint, and on that basis, denies them.

60. Defendant uses the Meta Pixel for such marketing, advertising, and analytics purposes.

**ANSWER:** Defendant denies the allegations in Paragraph 60.

## V. DEFENDANT KNOWINGLY DISCLOSES CLASS MEMBERS' PII AND VIDEO-VIEWING INFORMATION TO GOOGLE AND META

61. Based on the above, it is abundantly clear that Defendant *intentionally* and

---

[98] *Id.*
[99] META, CUSTOM AUDIENCES, https://developers.facebook.com/docs/meta-pixel/ implementation/custom-audiences.
[100] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005.

*knowingly* discloses Becker Website users' personally identifiable information and video-viewing information to Google and Meta.

**ANSWER:** Defendant denies the allegations in Paragraph 61.

62. First, as outlined above, Defendant "knew that it was collecting data from users that identified personalized information about them because, in exchange for the data, [Google and Meta] provided [Defendant] with analytics allowing [Defendant] to provide advertisements tailored to specific users." *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 31 (D. Mass. 2024)

**ANSWER:** Paragraph 62 of the Complaint does not state an allegation of fact and therefore no response is required. To the extent a response is required, Defendant notes that Paragraph 62 appears to quote portions of a court opinion, but Defendant denies any mischaracterization of the opinion. Defendant otherwise denies the allegations in Paragraph 62.

63. Indeed, Defendant admits in its "Online Cookie Policy"—which is not "a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" pursuant to 18 U.S.C. § 2710(b)(2)(B)(i)—that "***[w]e use Google Analytics*** ... [which] uses Cookies or other tracking technologies to help us analyze how users interact with the Sites and Services, compile reports on their activity, and provide other services related to their activity and usage. ... We may use Cookies and similar technologies third-party vendors provide to collect information on user behavior (e.g., screens and pages visited, buttons and links clicked, limited information entered, and user taps and mouse movements)."[101] Defendant also states in its "Online Cookie Policy" that "***[t]argeting [c]ookies*** ... may be set through our Sites by

[101] BECKER, ONLINE COOKIE POLICY, https://www.becker.com/online-cookie-policy (last accessed June 19, 2025) (emphasis added).

our advertising partners. They may be used by those companies to ***build a profile of your interests and show you relevant ads*** on other websites."[102]

**ANSWER:** Paragraph 63 contains characterizations of and quotations from Defendant's Online Cookie Policy that speaks for itself and requires no response from Defendant. To the extent a response is required, Defendant denies any allegations inconsistent with, or any inaccurate characterizations of, that document, and otherwise denies all remaining allegations in this Paragraph.

64. Second, the code for the Google and Meta tracking technologies at issue did not spontaneously appear on the Becker Website (which Defendant owns and operates). Instead, Defendant intentionally and knowingly integrated the foregoing trackers (the Meta Pixel, as well as Google Analytics, Google Conversion Linker, Google Signals, and Google's tags/libraries associated therewith) into the HTML documents and/or other libraries defining the contents of the Website. As to Google Analytics, Google explains: "To begin seeing data in your new Google Analytics 4 property, you'll need to do one of the following: Add the tag to a website builder or CMS-hosted website ... Add the Google tag directly to your web pages ... [or a]dd your tag using Google Tag Manager[.]"[103] As to Google Conversion Linker, Google explains: "To set up a conversion linker tag: Click Tags and then New. Click Tag Configuration and select Conversion Linker. Select a trigger. In most cases, you should use a trigger that fires on all page views, or on specific page views where site visitors will land after an ad is clicked. Save and publish your tag configuration."[104] As to Google Signals, Google explains: "[To a]ctivate

---

[102] *Id*. (emphasis added).

[103] GOOGLE, [GA4] SET UP ANALYTICS FOR A WEBSITE AND/OR APP, https://support.google.com/analytics/answer/9304153.

[104] GOOGLE, CONVERSION LINKER, https://support.google.com/tagmanager/answer/ 7549390.

Google signals[, 1. I]n Admin, under Data collection and modification, click Data Collection. ... 2. Turn on the switch for Enable Google signals data collection." [105] As to the Meta Pixel, Meta explains: "to set up a Meta Pixel[,] ... set up the [pixel] base code on your website. ... [To do so, g]o to Meta Events Manager."[106]

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 64 of the Complaint regarding what Google and Meta explain, and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 64 of the Complaint.

65. Therefore, Defendant knowingly and intentionally provides personal information and video-viewing information to Google and Meta for marketing, advertising, and analytics services.

**ANSWER:** Defendant denies the allegations in Paragraph 65.

## VI. EXPERIENCE OF PLAINTIFF

66. Plaintiff Michael Garcia is a resident and citizen of Melrose, Massachusetts. In or around January 2024, Plaintiff created a Becker account to access his Certified Public Accountant (CPA) exam review subscription. Shortly thereafter, Plaintiff began using the Becker Website and his Becker account to watch various pre-recorded videos. Plaintiff most recently watched a pre-recorded video on the Website, using his Becker account, in or around June 2025.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the

---

[105] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345.

[106] META, HOW TO SET UP AND INSTALL A META PIXEL, https://www.facebook.com/business/help/952192354843755?id=1205376682832142. *See also* META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started ("Before you can install the Pixel, you will need your Pixel's base code, which you can find in the Ads Manager > Events Manager.").

allegations in Paragraph 66 and on that basis, denies them.

67. Plaintiff was logged into his Google account when he accessed the Becker Website and his Becker account. Plaintiff created his Google account prior to creating his Becker account. Plaintiff had personalized adds[sic] turned on.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 67 and on that basis, denies them.

68. Plaintiff also maintains a Facebook account associated with the same phone number used for his Becker account. Plaintiff signed up for and created his Facebook account over ten (10) years ago.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 68 and on that basis, denies them.

69. By subscribing to and paying for a Becker Certified Public Accountant (CPA) exam review subscription, Plaintiff received access to watch exclusive Website pre-recorded videos, in addition to other benefits. Specifically, Plaintiff watched pre-recorded videos related to the Financial Accounting and Reporting ("FAR") CPA exam.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 69 and on that basis, denies them.

70. At all relevant times, Plaintiff never consented to, agreed to, or otherwise permitted Defendant to disclose his PII and video-viewing information to third parties, including Google and Meta.

**ANSWER:** Defendant denies the allegations in Paragraph 70.

71. Likewise, Defendant never gave Plaintiff the opportunity to prevent the disclosure of his PII and video-viewing information to third parties, including Google and Meta.

**ANSWER:** Defendant denies the allegations in Paragraph 71.

72. Nevertheless, each time Plaintiff viewed a pre-recorded video on the Becker Website, Defendant disclosed Plaintiff's PII and video-viewing information to Google and Meta via the Meta Pixel, as well as Google Analytics, Google Conversion Linker, Google Signals, and Google's tags/libraries associated therewith. Specifically, each time Plaintiff viewed a pre-recorded video on the Becker Website, Defendant disclosed to Google: (i) Google Signals, which "associates [data] with user[s'] ... Google accounts," for "users who have signed in ... and who have turned on Ads Personalization" [107]; (ii) Google cookies, which allow Google to "remember" what a user has done on previous pages [and their] interactions with the [W]ebsite" [108]; (iii) the Google Advertiser user ID ("AUID"), which is "a unique identifier for a user" used in connection with advertising[109]; and (iv) video title and URL. Each time Plaintiff viewed a pre-recorded video on the Becker Website, Defendant disclosed to Meta: (i) hashed phone number; (ii) the "Facebook browser ID value [] stored in the _fbp browser cookie" [110]; and (iii) video title and URL, along with video interactions.

**ANSWER:** Defendant denies the allegations in Paragraph 72.

73. Using this information, Google and Meta were able to identify Plaintiff and

---

[107] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; *see also* GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

[108] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides /collection/analyticsjs/cookie-usage.

[109] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/google-ads/answer/9148089?hl=en.

[110] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/. *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/docs/ marketing-api/conversions-pi/parameters/fbp-and-fbc.

attribute his video viewing records to an individualized profile of Plaintiff. Indeed, even an ordinary person could identify Plaintiff using the data Defendant disclosed to Google and Meta. Google and Meta compiled Plaintiff's PII and activity on the Becker Website (including video-viewing information), which Defendant used and continues to use for marketing, advertising, and analytics purposes.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 73 and on that basis, denies them.

## PARTIES

74. Plaintiff Michael Garcia is a resident of Melrose, Massachusetts and has an intent to remain there, and is therefore a citizen of Massachusetts.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 74 and on that basis, denies them.

75. Defendant Becker Professional Development Corporation is a Delaware corporation with its principal place of business at 399 South Spring Avenue, Suite 108, St. Louis, Missouri 63110. Defendant Becker Professional Development Corporation operates the Becker Website, which is used throughout Massachusetts and the United States.

**ANSWER:** Defendant admits that it is a Delaware corporation with its principal place of business at 399 South Spring Avenue, Suite 108, St. Louis, Missouri 63110. Defendant further admits that it operates the Becker Website. Defendant otherwise denies the allegations in this Paragraph.

## JURISDICTION AND VENUE

76. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

**ANSWER:** Paragraph 76 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that Plaintiff has purported to assert a claim arising under the VPPA and that the Court therefore has federal question jurisdiction over this action. Defendant otherwise denies the remaining allegations in this Paragraph.

77. This Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

**ANSWER:** Paragraph 77 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 77.

78. This Court has personal jurisdiction over Defendant because Defendant collected and disseminated the personally identifiable information and video-viewing information giving rise to this lawsuit in this District, Defendant conducts substantial business in this District, and the conduct giving rise to this action arises out of and relates to that business. Indeed, Defendant purposefully avails itself of the benefits of this District by selling subscriptions to persons whom Defendant knows to reside in this District (based on billing information provided to Defendant at checkout).

**ANSWER:** Paragraph 78 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits only that it conducts business in this District, and that persons provide billing information to Defendant at checkout. Defendant otherwise denies the remaining allegations in Paragraph 78.

79. This Court also has personal jurisdiction over Defendant because Defendant ships textbooks to users' addresses, including Massachusetts users. This is evinced by the following

image from the Becker Website, where Defendant boasts that users who purchase "CPA ***Online*** Courses & Exam Review" can additionally receive "Best-in-class ***printed*** Textbooks." (Emphasis added).

**ANSWER:** Paragraph 79 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits only that its Website advertises printed textbooks as part of certain course packages that may be shipped to purchasers, including in Massachusetts. Defendant otherwise denies the remaining allegations in Paragraph 79.

80. This Court also has personal jurisdiction over Defendant because the Becker Website specifically targets Massachusetts residents. The Website advertises Becker's "***Massachusetts*** CPA license renewals" and encourages users to click to "[f]ind a course to fit your schedule[.]" (Emphasis added).

**ANSWER:** Paragraph 80 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits only that the Website contains the referenced advertising content. Defendant otherwise denies the remaining allegations in Paragraph 80.

81. Defendant also advertises that "Becker's CPE course, … will meet your ***Massachusetts*** ethics requirement." (Emphasis added).

**ANSWER:** Defendant admits only that the Website contains the referenced statement. Defendant otherwise denies the remaining allegations in Paragraph 81.

82. Defendant encourages users to interact with its Website and "[f]ind your local Becker representative." To do so, Website users may utilize the drop-down menu and select "Massachusetts." This allows Website users to find ***Massachusetts-specific Becker representatives.*** This is evinced by the following image, where "Michael Ceglie" is listed as

Becker's "Account Manager Statewide" and "Kristin Curcuru" is listed as Becker's "Regional Manager" for Massachusetts:

**ANSWER:** Defendant admits only that the Website allows users to select a state, including Massachusetts, and that the names Michael Ceglie and Kristin Curcuru currently appear on Defendant's Website. Defendant otherwise denies the remaining allegations in Paragraph 82.

83. Additionally, Defendant has ***partnered with the Massachusetts Society of CPAs***. Defendant explains that "[t]he following national and state societies partner with Becker to support their members' professional development needs and to offer special pricing on Becker's CPA Exam Review."

**ANSWER:** Defendant admits only that the Website lists the Massachusetts Society of CPAs among its partner organizations. Defendant otherwise denies the remaining allegations in Paragraph 83.

84. Finally, the Becker Website shows that Defendant has a "direct-bill or preferred-provider arrangement" with various Massachusetts entities. Entities with whom Defendant has an arrangement include (1) "The Boston Foundation," which Becker lists as "***State & Local Government Agency-Paid***"; (2) the "***University*** of Massachusetts - Amherst"; (3) the "***University*** of Massachusetts – Dartmouth"; and (4) the employer "PKF JND, P.C."

**ANSWER:** Defendant admits only that the Website lists the referenced entities among those with which it has an arrangement. Defendant otherwise denies the remaining allegations in Paragraph 84.

85. Defendant's arrangements with various Massachusetts entities—including public universities—are designed to, inter alia, "bill" Massachusetts entities for offerings to individual

Website users relating to Becker's "CPA, CMA, CIA or EA Exam or [] CPE credits with Becker." In other words, these arrangements involve the very products at issue in this First Amended Complaint ("FAC").

**ANSWER:** Defendant admits only that Defendant has arrangements with various Massachusetts entities. Defendant otherwise denies the remaining allegations in Paragraph 85.

86. Moreover, the Court has specific personal jurisdiction over Defendant because Defendant obtained valuable personal data about Massachusetts consumers for its own commercial gain. *See, e.g., Briskin v. Shopify, Inc.*, 135 F.4th 739, 756 (9th Cir. 2025) (en banc). Defendant knows where users of its Website are located based on users' IP addresses[111] and knowingly discloses user information to third parties. Through those business activities, Defendant tortiously violated Plaintiff's privacy through its collection, maintenance, and/or sale of valuable personal data from Massachusetts consumers.

**ANSWER:** Paragraph 86 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 86.

87. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

**ANSWER:** Paragraph 87 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 87.

## CLASS ALLEGATIONS

88. **Class Definition:** Plaintiff seeks to represent a class of similarly situated

---

[111] *See, e.g.*, Diana Bocco, GEOTARGETLY, *IP Geolocation - How It Works*, https://geotargetly.com/blog/how-ip-geolocation-works ("At its core, IP geolocation involves the identification of an individual's or a device's geographical location based on their IP address. ... IP geolocation has significant implications for businesses ... Geolocation enables businesses to offer personalized user experiences.").

individuals defined as all persons in the United States who created a Becker account, used the Website to watch a pre-recorded video, and subsequently had their PII disclosed to third parties (the "Class").

**ANSWER:** Paragraph 88 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 88 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 88.

89. Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

**ANSWER:** Paragraph 89 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 89 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 89.

90. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Becker, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

**ANSWER:** Paragraph 90 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 90 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 90.

91. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is

a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

(a) whether Defendant collected Plaintiff's and Class Members' PII;

(b) whether Defendant unlawfully disclosed and continues to disclose Website users' PII, including their video-viewing records, in violation of the VPPA;

(c) whether Defendant's disclosures were committed knowingly; and

(d) whether Defendant disclosed Plaintiff's and Class Members' PII without consent.

**ANSWER:** Paragraph 91 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 91 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 91.

92. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used a Becker account to watch pre-recorded videos on the Website and consequently had his PII and video-viewing information transmitted to third parties, Google and Meta, without his consent.

**ANSWER:** Paragraph 92 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 92 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 92.

93. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring. Plaintiff and

his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff has raised viable statutory claims, of the type reasonably expected to be raised by members of the Class, and Plaintiff will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

**ANSWER:** Paragraph 93 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 93 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 93.

94. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the

management of this action as a class action.

**ANSWER:** Paragraph 94 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 94 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 94.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the VPPA,**
**18 U.S.C. § 2710**

95. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

**ANSWER:** Defendant incorporates by reference its responses to the preceding paragraphs as if fully set forth herein. Defendant denies the remaining allegations in Paragraph 95.

96. Defendant is a "video tape service provider" as defined by the VPPA because it "engages in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as Defendant provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via the Website.

**ANSWER:** Paragraph 96 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in this Paragraph.

97. Plaintiff and members of the Class are "consumers" as defined by the VPPA because they created Becker accounts with their personal information such as first and last name, email address, and phone number, paid for their subscriptions, obtained access to exclusive video content as a result, and subsequently watched videos through those accounts on the Becker

Website. 18 U.S.C. § 2710(a)(1). Under the VPPA, this means that they were "subscriber[s]" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

**ANSWER:** Paragraph 97 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 97.

98. Plaintiff and members of the Class viewed pre-recorded videos using the Becker Website. During these occasions, Defendant disclosed Plaintiff's and Class Members' PII to third parties. Specifically, Defendant disclosed to Google: (i) Google Signals, which "associates [data] with user[s'] ... Google accounts," for "users who have signed in ... and who have turned on Ads Personalization"[112]; (ii) Google cookies, which allow Google to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite"[113]; (iii) the Google Advertiser user ID ("AUID"), which is "a unique identifier for a user" used in connection with advertising[114]; and (iv) video title and URL. Defendant disclosed to Meta: (i) hashed phone number; (ii) the "Facebook browser ID value [] stored in the _fbp browser cookie"[115]; and (iii) video title and URL, along with video interactions.

**ANSWER:** Defendant denies the allegations in Paragraph 98.

99. The information disclosed by Defendant constitutes "personally identifiable

---

[112] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345; *see also* GOOGLE, [GA4] PREDEFINED USER DIMENSIONS, https://support.google.com/analytics/answer/9268042 ("Google signals is data from users who sign in to Google. When Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]").

[113] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides /collection/analyticsjs/cookie-usage.

[114] GOOGLE ADS HELP, TROUBLESHOOT YOUR SITEWIDE TAGGING, https://support.google.com/google-ads/answer/9148089?hl=en.

[115] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/. *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/docs/ marketing-api/conversions-pi/parameters/fbp-and-fbc.

information" because it makes it "reasonably and foreseeably likely to reveal which [Becker] videos [Plaintiff and members of the Classes] [] obtained." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016); *see also* 18 U.S.C. § 2710(a)(3). Indeed, the information disclosed by Defendant to Google and Meta enables even an ordinary person to identify which specific videos were watched by Plaintiff and specific members of the Class.

**ANSWER:** Paragraph 99 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 99 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 99.

100. Defendant's transmissions of Plaintiff's and Class Members' PII to Google and Meta, via the Meta Pixel, as well as Google Analytics, Google Conversion Linker, Google Signals, and Google's tags/libraries associated therewith, constitute "knowing[] disclosures" of Plaintiff's and members of the Classes' "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1). Defendant "knew that [Becker] was collecting data from users that identified personalized information about them because, in exchange for the data, [Google and Meta] provided [Defendant] with analytics allowing [Defendant] to provide advertisements tailored to specific users." *Saunders,* 711 F. Supp. 3d at 31.

**ANSWER:** Paragraph 100 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 100 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 100.

101. Plaintiff and the Class Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties, including Google and

Meta.

**ANSWER:** Defendant denies the allegations in Paragraph 101.

102. Nor were Defendant's disclosures of Plaintiff's and Class Members' PII made in the "ordinary course of business" as the term is defined by the VPPA. Defendant's disclosures to Google and Meta were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

**ANSWER:** Paragraph 102 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 102.

103. On behalf of himself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** Paragraph 103 sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 103 and on that basis, denies them. Defendant otherwise denies the allegations in Paragraph 103.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For an award of statutory damages to the extent available;

(e) For punitive damages, as warranted, in an amount to be determined at trial;

(f) For prejudgment interest on all amounts awarded;

(g) For injunctive relief as pleaded or as the Court may deem proper;

and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

**ANSWER**: Defendant incorporates by reference its responses to all preceding Paragraphs of the Complaint as if fully set forth herein. The Prayer for Relief fails to state any allegation of fact and is therefore denied, and Becker denies that either Plaintiff or the purported Class is entitled to any form of relief sought in the Complaint or to any other form of relief whatsoever.

**JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

**ANSWER**: Defendant incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein. The Jury Demand fails to state any allegation of fact and is therefore denied.

## DEFENSES

Becker incorporates by reference its foregoing responses to the Paragraphs of the Complaint as if fully set forth herein. Becker asserts the following affirmative and other defenses to the claims asserted in the Complaint, without assuming any burden of pleading or proof that would otherwise rest on Plaintiff. Becker reserves the right to amend this Answer and to assert additional defenses and to supplement, alter, or change its Answer and Affirmative Defenses upon further investigation and discovery.

**FIRST DEFENSE**

The FAC, and each of the purported claims therein, fails to state facts sufficient to constitute a cause of action against Becker.

**SECOND DEFENSE**

Plaintiff's claims are barred, in whole or in part, to the extent the claims were not filed within the applicable statutes of limitations filing periods.

**THIRD DEFENSE**

Plaintiff is not a proper plaintiff because Plaintiff is not an "aggrieved person" under the VPPA, 18 U.S.C. § 2710(b)(1).

**FOURTH DEFENSE**

Plaintiff's claims are barred by the doctrine of laches, waiver, and estoppel.

**FIFTH DEFENSE**

At all times material to this action and the allegations set forth in the Complaint, Becker acted lawfully and in good faith and without any intent to deny Plaintiff any rights under applicable law, and has reasonable grounds for believing it was complying with applicable law.

**SIXTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Defendant did not "knowingly" disclose any information within the meaning of the VPPA, 18 U.S.C. § 2710(b)(1).

**SEVENTH DEFENSE**

The conduct alleged in the Complaint is expressly permitted under the VPPA. *See* 18 U.S.C. § 2710(b)(2).

**EIGHTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because any disclosures were made in the ordinary course of business, within the meaning of 18 U.S.C. § 2710(b)(2)(E).

**NINTH DEFENSE**

If Plaintiff suffered any loss or damage, which Becker denies, any such loss or damage was caused by Plaintiff's own conduct and not by any alleged conduct on the part of Becker.

**TENTH DEFENSE**

Plaintiff's claim is barred because Plaintiff has not suffered any damage proximately caused by Becker.

**ELEVENTH DEFENSE**

Plaintiff's claim is barred to the extent Plaintiff failed, refused and/or neglected to mitigate or avoid the damages complained of in the Complaint, if any.

**TWELFTH DEFENSE**

Any and all damages claimed by Plaintiff, whether compensatory, punitive, liquidated, actual, equitable, attorneys' fees, or otherwise, are subject to all statutory exclusions, caps and limitations applicable to claims.

**THIRTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff consented to any alleged disclosure of information.

**FOURTEENTH DEFENSE**

Plaintiff's claims for declaratory and/or injunctive relief fail because Plaintiff cannot establish a real and immediate threat of future injury.

**FIFTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Defendant did not disclose "personally identifiable information" as defined by the VPPA, 18 U.S.C. § 2710(a)(3).

**RESERVATION OF DEFENSES**

Becker has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on such other applicable affirmative defenses as may become available by law, or pursuant to statute, or appear during the proceedings in this action. Becker reserves the right to amend its answer and/or affirmative defenses accordingly and assert any such defenses.

Dated: August 5, 2026

Respectfully submitted,

BECKER PROFESSIONAL DEVELOPMENT CORPORATION

By its attorneys,

/s/ *Tony K. Lu*

Tony K. Lu (BBO# 678791)
DENTONS US LLP
101 Federal Street
Suite 1900
Boston, Massachusetts 02110
Tel: (617) 235-6817
tony.lu@dentons.com

Kristen C. Rodriguez (*admitted pro hac vice*)
Rebecca Hughes Parker (*admitted pro hac vice*)
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Email: kristen.rodriguez@dentons.com
Email: rebeccahughes.parker@dentons.com

Lyndsey M. Wajert (*admitted pro hac vice*)
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
lyndsey.wajert@dentons.com

## CERTIFICATE OF SERVICE

I certify that on August 5, 2026, I caused to be filed electronically a true copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will notify the parties of record via electronic notification.

/s/ *Tony K. Lu*____________